148 So. 129
**SOVEREIGN CAMP, W. O. W., v. BROCK.**
**4 Div. 705.**

Supreme Court of Alabama.
May 11, 1933.

T. L. Borom, of Troy, for appellant.

M. A. Owen, of Elba, and M. S. Carmichael, of Montgomery, for appellee.

580

BROWN, Justice.

This is an action by the beneficiary named in an "Ordinary Whole Life Certificate" of insurance issued by the defendant to Samuel H. Brock in pursuance of a written application made by the insured on the 26th day of August, 1930, in which the insured was asked the following questions and made the following answers:

"12. Have you within the past five years suffered any mental or bodily disease or infirmity? No.

"13. Have you within the past five years consulted or been attended by a physician for any disease or injury or undergone any surgical operation? No."

And made the following warranty: "For the purpose of securing this additional beneficiary certificate, I hereby warrant that I have not been sick since the date of *my original application*, except as stated herein; that I am now in sound bodily health; that I have no injury or disease that will tend to shorten my life," etc. Italics supplied.

The certificate was issued and delivered on the 30th day of September, 1930, and on its delivery the insured signed the following warranty: "I have read the above certificate * * * and accept the same * * * and warrant that I am in good health at this time, and have not been sick or injured since the date of my application."

Some of the defendant's special pleas set up fraud on the part of the insured in his application, alleging that said representations contained therein were made with *actual intent to deceive*, and others allege that the said fraudulent representations and warranties were in respect to *matters that increased the risk of loss*.

The plaintiff had judgment for the face of the policy with interest.

It is conceded that plaintiff made a prima facie case, by offering the certificate of insurance and a stipulation of fact that proof of loss had been duly made before suit brought.

The questions presented by the assignments of error relate to the special defenses of fraud and breach of warranty.

The appellant's first insistence is, that the evidence is without dispute or room for adverse inference that at the time of making the application and the delivery of the policy the insured was afflicted with the disease diagnosed as "syphilitic aortitis angina pectoris and hypertrophy" of the heart, a disease that materially increased the risk of loss, and therefore the court erred in refusing the affirmative charge.

The evidence shows that Brock, the insured, was stricken with his last illness on November 22, 1930, and lingered until the 28th day of January, 1931, when he died. The evidence goes to show that aortitis— an inflammation of the aorta—in some cases is caused by syphilis, and this in turn causes hypertrophy or enlargement of the heart; that these cause angina pectoris, but that the basic cause or disease is the syphilitic germ in the blood, and the presence of the germ in the blood can only be definitely ascertained by laboratory test. There was also evidence going to show that such inflammation is due to different causes.

The evidence further shows that Brock was treated at irregular intervals, from March 22, 1928, up to his last illness by Drs. Wilkerson and Hayes, and that he was treated during said last illness by the same physicians.

Dr. Wilkerson testified that he was consulted on March 22, 1928, and that insured then complained of "a tightness under the breast bone and pain down the outer side of both arms, brought on by exertion"; that he had been having this trouble for several months. "My diagnosis was syphilitic aortitis, angina pectoris, and a slight hypertension." That aortitis will shorten the life of a person so afflicted; that from witness' "knowledge and observation as a physician, and from the knowledge *I obtained* in my examination and diagnosis of the disease [with] which Samuel H. Brock was afflicted prior to the 26th day of August, 1930, the disease with which he was then afflicted was the cause of his death"; that "at the time I first examined Samuel H. Brock there was no evidence of hypertrophy of the heart. I do not recall the date on which hypertrophy of the heart of Samuel H. Brock first developed, but the first record that I have of enlargement or hypertrophy was on *November 5th, 1930*. On that date the examination showed his heart was enlarged. As well as I recall, *there was no evidence of enlargement of the heart prior to November 5th, 1930*. Between March, 1928, and August 26, 1930, Samuel H. Brock did have a disease that

would shorten his life, he had syphilitic aortitis, angina pectoris and a slight hypertension, any of these would tend to hasten his death."

The testimony of this witness shows that he did not in person make the laboratory test, but that this was made by Dr. Trumper.

Dr. Hayes testified, in short, that he was Brock's family physician; that he had known him for twenty years; that he saw and treated him prior to August 30, 1930. At that time Brock was not under special treatment by him; that he saw him occasionally; that he was then being treated by Dr. Wilkerson. At that time Brock was having what witness diagnosed as angina pectoris, a form of heart trouble, pain in the region of the heart and chest, supposed to be due to some trouble with the coronary arteries, sometimes called neuralgia of the heart; that witness sent Brock to Dr. Wilkerson in March, 1928, and had a report from Dr. Wilkerson, but there was no definite diagnosis at that time. Later on Dr. Wilkerson's diagnosis was that Brock was suffering with aortitis as well as angina pectoris; that witness could not give an opinion that Brock was suffering with aortitis about that time, that this could not be determined without a laboratory equipment; that from the diagnosis witness made Brock had angina pectoris; that from 1928 up until 1930, Brock had symptoms of angina pectoris. He was not specially ill, he went ahead with his work all the time, except occasionally he had acute pains, but did not quit work; that the pains he had were in the left chest and arm, in the region of the heart; that such pains would not indicate aortitis unless it had gone to the extreme condition; that there is no cure for hypertrophy and enlargement of the heart, and such diseases would necessarily shorten life. Hypertrophy is not a disease that a man would know himself he had; that witness, in his examination of the patient, did not discover that Brock had hypertrophy, that his blood pressure was up; that a man with high blood pressure, by taking care of himself, may live out his expectancy; that acute indigestion, or upper indigestion is frequently taken for heart trouble, and that heart trouble is sometimes diagnosed as indigestion. "With ordinary life, or ordinary active life, a person with hypertrophy of the heart, if it was to any degree, might reasonably expect his life to be shortened below his normal expectancy. If a man had only a moderate attack of hypertrophy, and used good care as to diet and health precautions, he would likely live his expectancy. * * * Of my own knowledge, I do not know that he had hypertension and aortitis, or whether he had the other complications."

Attached to the application for insurance made by Brock and a part thereof, offered by defendant, was the statement by "Deputy ß. F. Conner of the local camp," to the effect that he personally witnessed the signing of the application by Brock; that Brock was then regularly employed and working at his occupation, and apparently free from indications of ill health, and that from his knowledge Brock's mode of life, his habits and health he unqualifiedly recommended that the certificate applied for be issued.

The plaintiff offered the testimony of two witnesses in rebuttal, tending to show that except for occasional spells of indigestion, Brock actively performed his work involving active, hard labor, on up to his last illness.

One of the medical witnesses, Dr. Hayes, gave testimony in rebuttal, tending to show that a person afflicted with "aortitis, hypertension and high blood pressure" could perform office work, but, in his opinion, could not perform hard labor.

■ The burden of proof was on the defendant to show that the representations made by Brock were false, and were made with intent to deceive, or that said representations or warranties were false and that they were in respect to matters which increased the risk of loss. Sovereign Camp, W. O. W., v. Hutchinson, 214 Ala. 540, 108 So. 520.

■■ It cannot be positively affirmed on the testimony that representations made by Brock were false. Dr. Wilkerson's testimony is the strongest given touching this issue, and it has this infirmity, his diagnosis was from a laboratory test made, not by the witness personally or under his personal observation, but by Dr. Trumper, who was not called to testify, and while in medical practice this may be perfectly sound, yet when it comes to establish a given fact in a court of justice, first hand information, when it is available, only is accepted. Mutual Life Ins. Co. of New York v. Mankin, 223 Ala. 679, 138 So. 265. Another infirmity is that the testimony of this witness is, that he did not, according to his diagnosis, discover the basic trouble in Brock's ailment until a month or more after the representations and warranties were made, leaving the facts of the existence of the disease at the date of the application as well as the delivery of the certificate, to inference, which it was the province of the jury to draw, aided by the testimony of the medical witnesses and all other evidence in the case. Mutual Life Ins. Co. of New York v. Mankin, supra; Sovereign Camp, W. O. W., v. Padgett, 222 Ala. 93, 130 So. 797; Sovereign Camp. W. O. W., v. Screws, 218 Ala. 599, 119 So. 644; National Life & Accident Ins. Co. v. Puckett, 217 Ala. 110, 115 So. 12.

Therefore, the court did not err in refusing the affirmative charge requested by the defendant.

■ After a painstaking examination of the evidence, we cannot affirm that the verdict

582

of the jury was contrary to the great weight of the evidence, and that the circuit court erred in denying the motion for a new trial. Sovereign Camp, W. O. W., v. Screws, supra.

The insurer in taking the application required a statement from the deputy of the local camp taking the application, to the effect that the insured was then actively pursuing his occupation. This goes to show that it regarded this fact as material to the risk it was assuming.

The evidence going to show that Brock pursued his occupation continuously, and that in doing so he performed hard labor, was admitted without error. National Life & Accident Insurance Co. v. Puckett, supra; Sovereign Camp, W. O. W., v. Padgett, supra.

We find no reversible error in the record and the proceedings of the trial court.

Affirmed.

ANDERSON, C. J., and THOMAS and KNIGHT, JJ., concur.