122 So.2d 754

**LIFE INSURANCE COMPANY OF VIRGINIA**

v.

**Eunice H. O'BRIEN.**

**6 Div. 260.**

Supreme Court of Alabama.

Aug. 18, 1960.

Rehearing Denied Sept. 15, 1960.

Cabaniss & Johnston and Drayton T. Scott, Birmingham, for appellant.

J. Robt. Huie and J. Terry Huffstutler, Birmingham, for appellee.

LIVINGSTON, Chief Justice.

This is an appeal by defendant from a judgment in favor of plaintiff for $1,086.17 and from an order overruling defendant's motion for a new trial.

The action was brought upon a policy of life insurance, the complaint being in code form. The defendant pleaded in short by consent with a plea of tender of $6.08, the amount of premiums paid on the policy.

Defendant relied upon the following defenses: (1) misrepresentations in the application for insurance, and (2) breach of the sound health clause in the application attached to the policy.

On April 12, 1955, Joseph B. O'Brien made application to the Life Insurance Company of Virginia for a policy of life insurance in the principal sum of $1,000, at a premium of $.75 weekly. Although the policy bore issue date of April 18, 1955, the record is not clear as to when it was delivered. Mr. O'Brien was admitted to the Veterans' Hospital in Birmingham on April 21, 1955, nine days after the application was executed. He died in the Veterans' Hospital in Atlanta on May 15, 1955. The death certificate lists the underlying cause of death as "Chronic Glomerulo Nephritis," duration, 3 years, and as a condition contributing to death "Hypertensive Cardio-Vascular Disease," duration, 5–6 weeks.

The following questions and answers are found in the application for the policy:

"5.  Has Proposed Insured ever had or been treated for:

"A. Heart disease, shortness of breath, or high blood pressure? ------------ No.
"C. Albumin, blood in the urine, sugar, diabetes, or any kidney disease?-- No.

"10.  Weight (in clothes) :------
"A. Any recent loss? ...... 170 lbs.

The application also provided in part:

"* * *  I hereby agree * * * (2) that except as otherwise provided in the attached receipt bearing the same number as this application, the insurance herein applied for shall not take effect until a policy therefor is delivered to me and the first premium paid while the Proposed Insured * * is in good health, * * *."

The "attached receipt" given to the insured was a binding receipt, effective only in event four weeks' premiums were paid in advance.

In its answers to interrogatories propounded to it by plaintiff, and introduced in evidence, appellant admitted that the premiums paid on the insurance were sufficient to carry the insurance through May 15, 1955, the date of insured's death.

A condensed recital of the evidence given by each of the witnesses is as follows:

John H. Emnistringer. Mr. Emnistringer was an employee of the Veterans' Administration and produced the records of the Veterans' Administration relating to the hospitalization of Mr. O'Brien. The hospital records showed the following state of facts:

"This is the first admission to BVAH of this 30 year old white male who has been a known hypertensive for at least 3 years * * *. He went to the Red Cross to donate blood about 3 years ago and was turned down because he had high blood pressure. He was all right and noticed no symptoms until several months ago when he noticed the gradual onset of weakness and a tired feeling, which has been particularly severe for the last two weeks. He had a more or less sudden onset about a month ago of multiple symptoms, including exertional dyspnea (difficult or labored breathing) that progressed to dyspnea at rest, orthopnea (inability to breath except in an upright posi-

tion), productive cough and accompanying substernal chest pain, hemoptysis (spitting of blood), nausea and vomiting, and frequent nosebleed. He has also had intermittent palpitation for one month, normally occurring at night and PND for about one month that awakens him * * * He has had anorexia (loss of appetite) for the past 6–8 weeks and nausea and vomiting for one month, and there has been a concomitant weight loss of 15 lbs. over the past 2 months. He has had nocturia (excessive urination at night 1x (one time) per night for about a year, but this has increased over the past 6 weeks and has been much worse (4–5x) for the past two weeks. He has been told that his BP (Blood pressure) was as high as 220. Hypertension had been treated for the past six months with serpasil."

The diagnosis of insured's condition at the time of his admittance was (1) chronic glomerulonephritis, (2) hypertensive cardiovascular disease, (3) cardiac insufficiency and (4) anemia.

Dr. E. E. Eddleman testified that he was Chief of Cardiovascular Service at the Veterans' Hospital in Birmingham and that although he was not sure whether he saw Mr. O'Brien or not, he had a recollection of discussing the patient with others and had a summary of the case. He stated that his summary was sufficient to refresh his recollection and he would not need to check the hospital records unless there were some small points. He testified that on the date of admission, April 21, 1955, in his opinion Mr. O'Brien was suffering from chronic glomerulonephritis and that such condition would tend to shorten a person's life; that also on the date of admission, the insured's blood pressure was 240/140 which was very high, the normal blood pressure for a person of the age of Mr. O'Brien being 130/80; that the records disclose that the cause of Mr. O'Brien's death on May 15, 1955, was chronic glomerulonephritis, which was the same disease he had on his admit-

tance to the hospital. In his opinion, the insured was suffering from the same condition on April 12, 1955 (the date of the application).

T. C. Robbins testified that he was local manager of the Birmingham office of the defendant and that they kept no record of the date of delivery of policies. He further stated, however, that all industrial policies were dated on a Monday (April 18, the issue date of this policy was on Monday) and are received by the Birmingham office on the Friday following issue date. This policy, he stated, therefore, would not have been delivered to the Birmingham office until Friday, April 22nd.

H. B. Pace testified that he was associate manager of the defendant's Birmingham office and that he took the application for the policy, received $3 in advance premium, and gave the defendant a binding receipt. On cross-examination, he stated that he had known the insured for a number of years and that during the time he knew him, to his knowledge, the insured hadn't had any serious illness. He further stated that he asked the insured each and every question on the application and the insured gave the answers found on the application. He also stated that he knew insured and had known him for a year or so, and knew that he worked out there with his brother, the Southern Jack Company; that the day he took insured's application for $1,000 insurance, he tried to get insured to take $10,000 insurance; that on the day he took insured's application he appeared to be in good health; that he did not recall what date he delivered the policy.

Assignment of error I is that the trial court erred in overruling defendant's motion for a new trial. There were 14 grounds assigned by the appellant in support of this motion. the first 8 of these grounds had to do with the verdict of the jury being contrary to the evidence, law, and the great preponderance of the evidence. The 9th ground stated that the verdict was excessive. Grounds 10 through 13 dealt with the court's refusal to give 4

written charges, said charges being the general affirmative charges with and without hypotheses. The 14th ground is the same as assignment of error 6, and has to do with the refusal to admit evidence offered by appellant and objected to by appellee. Of these 14 grounds for a motion for a new trial, appellant only argues the question of the verdict being against the great weight of the evidence.

■ Under the pleading in this case, the burden of proof was on the defendant (appellant) to show that the representations made by O'Brien were false and were made with intent to deceive, or that they were in respect to matters which increased the risk of loss. After a careful examination of all the evidence in this case, we cannot affirm that the verdict of the jury was contrary to the great weight of the evidence and that the circuit court erred in denying the motion for a new trial. Sovereign Camp W. O. W. v. Brock, 226 Ala. 579, 148 So. 129; and Sovereign Camp W. O. W. v. Hutchinson, 214 Ala. 540, 108 So. 520.

■ Assignments of error 2, 3 and 4 are predicated on the trial court's refusal to give the general charge with hypotheses for the defendant and are argued together.

In action on life policy where insurer defended on theory that insured was not in sound health when policy was delivered, questions whether or not insured had a disease or sickness at the time said policy was delivered, which materially increased the risk of loss, were questions for the jury. Sovereign Camp W. O. W. v. Davis, 242 Ala. 235, 5 So.2d 480.

There was no evidence that Mr. O'Brien had been sick, hospitalized, or treated for any disease prior to April 12, 1955. From the testimony of the agent who sold him the $1,000 industrial life insurance policy, and at that time tried to sell him a $10,000 policy, and who stated that the insured was working on the day the application was taken, presents questions of fact for the jury. Testimony as to insured's apparent good health and discharge of daily duties, considered with expert testimony that he had a fatal malady before application for and delivery of life insurance policy, presented jury questions of falsity and materiality of his representation that he was in good health when the policy was delivered.

The foregoing answers all the argued assignments of error and finding no error to reverse, the case is due to be, and is, affirmed.

Affirmed.

LAWSON, STAKELY and MERRILL, JJ., concur.