160 So. 696

## COLUMBIAN MUT. LIFE INS. CO. v. VASSER.

### 1 Div. 853.

Supreme Court of Alabama.

March 21, 1935.

Rehearing Denied April 25, 1935.

Lyons, Chamberlain & Courtney, of Mobile, for appellant.

286

Wm. V. McDermott, of Mobile, for appel-
·lee.

GARDNER, Justice.

The suit is on a life insurance policy in
the sum of $1,000, issued by defendant com-
pany January 19, 1925, on the life of Joseph
Vasser, who died on June 4, 1933, with a pol-
icy indebtedness of $206.70. The monthly pre-
miums due under the policy were paid to and
including the month of March, 1933, but there
was default in payment of those due in April,
May, and June. There was no reinstatement
of the policy, and nothing done by apportion-
ment of surplus or otherwise prior to insur-
ed's death. The defendant tendered and paid
into court in full settlement the sum of $162.-
31.

Defendant's contention as to the meaning
and effect of the language of the policy con-
tract as applied to the situation disclosed by
the agreed statement of facts is found in the
averments of plea 3, salient features of which
appear in the report of the case. Plaintiff
contends that the language is ambiguous,
and that under .the well-recognized rule of
construction in such cases should be con-
strued in favor of the insured and to the
effect that the amount of indebtedness is
merely to be deducted from the face amount
of the policy; such being the meaning of the
word "benefit," as found in the quoted ex-
tract from the policy set out in plea 3.

Confessedly, this same policy contract un-
der like conditions as here presented was
considered and determined by the Mississippi
Supreme Court in the comparatively recent
case of Neal v. Columbian Mutual Life As-
sur. Soc., 161 Miss. 814, 138 So. 353, 355 and,
if the holding of that authority is here ap-
proved, defendant's plea presented a good de-
fense and demurrer thereto should have been
overruled. As sustaining its conclusion, the
Mississippi court cites Mills v. National Life
Ins. Co., 136 Tenn. 350, 189 S. W. 691, where
the language was the same as there consider-
ed, with the exception of the added provi-
sion that "any indebtedness to the company
* * * will be deducted from the cash val-
ue," and quotes therefrom the following ex-
tract: "We do not find any provision of the
policy whereby it could be contended that
continued insurance in the full amount could
exist, and an indebtedness be outstanding at
the same time. When the policy lapses it
becomes, so to speak, in liquidation under its
terms, and if the reserve or cash value has
been withdrawn, there is no fund left to pay
for continued insurance during the extended
term, and therefore the extended term insur-
ance fails to take effect. This is necessarily
sound insurance business."

But plaintiff insists the contract makes no
reference to cash surrender value and that the
construction placed upon the language of the
policy by the Mississippi court is unauthoriz-
ed and unsound.

While recognizing the rule that in
case of doubt the policy contract is to be con-
strued most strongly against the insurer, yet
our decisions are equally emphatic that this
does not authorize a strained, unnatural, or
unreasonable construction. Moore v. Bank-

ers' Credit Life Ins. Co., 223 Ala. 373, 136 So. 79S. And in considering this character of contract, in order to determine the intention of the parties, which is the "pole star" of all rules of construction, the court should give meaning and effect to the language used in the light of the business being transacted. Such was the view of the Mississippi court where it was pointed out that upon the lapse of a policy it is out of the cash surrender value the fund must be obtained which purchases extended insurance, and hence the conclusion that in substance and effect the language of the policy in Mills v. National Life Ins. Co., supra, considered by the Tennessee court was the same as presented in the Neal Case, supra. Upon a careful study of the opinion of the Mississippi court, we are persuaded the correct construction was given the language of the contract, and we quote therefrom the following excerpts as expressive of our views:

"The demurrer to special plea No. 1 admits the allegations thereof, and the decision of the question of whether or not the demurrer was wrongfully overruled involves a consideration of the meaning and consideration of the terms and provisions of the insurance contract and loan agreement quoted above.

"It is the contention of the appellant that the meaning of the word 'benefit' in the clause of the covenant providing that 'any indebtedness to the Society placed on the covenant will operate to reduce the benefit' is ambiguous, and may be reasonably held to refer to the face of the policy rather than the cash surrender value thereof, and therefore it must be given the construction or meaning that would be most favorable to the assured by reducing the face of the policy in an amount equal to the indebtedness rather than deducting the indebtedness from the cash surrender value in determining the amount of extended insurance.

"It does not appear to us that the provision of the covenant herein quoted, in reference to the reduction of the benefit and extended insurance by any indebtedness to the society placed on the covenant, is ambiguous. It appears that the appellant places too great emphasis on the phrase, 'any indebtedness to the Society placed on the covenant will operate to reduce the benefit,' without giving equal emphasis and consideration to the further provision of the same sentence that 'any indebtedness to the Society placed on the covenant will also proportionately reduce * * * the amount at risk under continued insurance.' If the contention of the appel-

lant that, after the lapse of the policy, continued insurance for the full original benefit, or face of the policy, is automatically in effect, to be reduced only by the amount of the indebtedness at the time of the settlement under the policy, is maintained, it will in effect write out of the contract the provision that any indebtedness placed on the covenant will proportionately reduce the amount of risk under continued insurance.

"The provisions in reference to reduction of the benefit and the proportionate reduction of the amount at risk under continued insurance must be considered and construed together, each as completely and fully covering the subject to which it is applicable. The cash surrender value of the covenant upon the lapse thereof is the fund which purchases extended insurance, and this extended insurance automatically comes into force for the term specified in the table set forth in the covenant, upon the lapse of the covenant, unless the assured, in the manner therein provided, elects to take a paid-up covenant for the amount specified in the said table. The contract between the parties expressly provided that this extended insurance should be for the term specified in the said table, but would be proportionately reduced by any indebtedness to the society placed on the covenant. A mere subtraction of the indebtedness from the full benefit named in the face of the covenant would not be a proportionate reduction of the amount at risk; and it seems clear to us that this provision means that the amount of extended insurance that would be purchased by the full or gross cash value of the covenant at the date of the lapse thereof, would be reduced in proportion that the net cash value, after deducting the indebtedness from the gross cash value, bears to the gross cash value. The provision of the covenant for proportionately reducing the amount of paid-up insurance and amount at risk under continued insurance became operative upon the lapse of the policy; and it appears that the provisions that 'any indebtedness to the Society placed upon the covenant will operate to reduce the benefit' can only apply in the case of a settlement required to be made before there was any lapse of the covenant.

"While we do not understand the appellant to so contend in this case, upon analogous provisions involved in a case in another jurisdiction, the contention has been made and denied that the reduction created by reason of existing indebtedness of the assured was in the time of the extended insurance, and not in the amount for which such

insurance was continued. Pilot Life Ins. Co. v. Owen (C. C. A.) 31 F.(2d) 862. The provisions here involved are not subject to any such construction, as it is expressly provided that the extended insurance was to be for the specified term from the date of the premium."

■ The court in that case also treats the contention here pressed that such a construction results in exaction of usurious interest, and is unenforceable as against public policy, and is an unjust discrimination against the borrower. Answering this argument, the Mississippi court further said:

"Under no reasonable theory can the difference between the original amount of insurance named in the face of the covenant and the amount of continued insurance purchasable by the net cash value thereof be held to be interest on the loan. The reserve or cash value of the covenant is the only fund available for the purchase of extended insurance, and, when the assured withdrew a part of this fund by way of a loan, the amount of extended insurance which the remaining or net cash value would purchase was proportionately reduced, and the amount of this reduction was in no sense interest on the loan. * * *

"There is no contention that there is any distinction or discrimination in favor of individuals of the same class and equal expectations of life in the amount of payments, premiums charged for policies of life or endowment insurance, or in the dividends, but the contention is that there is discrimination between the borrowing and nonborrowing covenant holders in the benefits payable, or in the terms and conditions of the contracts made. There is nothing in the record to show or indicate that there is any difference or discrimination in the form or terms and conditions of the insurance contracts issued to individuals of the same class and equal expectation of life. In the provisions of the covenant of insurance and loan agreement, there is no discrimination against borrowing covenant holders. The covenant holders who permit the accumulated reserve or cash value to remain intact are, upon the lapse of the covenant, entitled to extended insurance for the full amount of the face of the covenant; and the fact that those who withdraw all, or a part of, this cash value by way of a loan, which by contract between the parties becomes due and payable immediately upon the lapse of the covenant of insurance, are entitled only to the amount of extended insurance which the available net cash value

will purchase, is not a discrimination against such policyholders. In each case the holder of the covenant receives exactly the benefit for which he pays."

In New York Life Ins. Co. v. Scheuer, 198 Ala. 47, 73 So. 409, cited in support of those contentions by plaintiff, the holding was that a method of settlement by the insurer whereby a borrower was allowed only three-fourths of the reserve value, and the time of extended insurance thus arbitrarily shortened, was discriminatory and unenforceable; and the case of Emig v. Mutual Benefit Life Ins. Co., 127 Ky. 588, 106 S. W. 230, 23 L. R. A. (N. S.) 828, was cited and quoted as presenting a like situation. On second appeal of the Scheuer Case, supra, the decree denying relief in the bill filed against the company was here affirmed. Scheuer, Wise & Co. v. New York Life Ins. Co., 203 Ala. 127, 82 So. 157.

But we need pursue these authorities no further, as we find no such discrimination here, and consider the above-quoted language of the opinion in the Neal Case, supra, as sufficient answer to these contentions.

Plaintiff further argues that the court's judgment might well be rested upon North Carolina Mut. Life Ins. Co. v. Terrell, 227 Ala. 410, 150 So. 318, 89 A. L. R. 1459, upon the theory that, during the three-month period after default, the policy remained in full force. But it was observed in the Terrell Case, supra, that the language used in various policies is so diverse that almost every case stands upon its own peculiar facts, and is incapable of any great extension as precedent in other cases.

We find this observation applicable here, as a careful examination of the language considered in that case will disclose its dissimilarity to that here treated, and that it cannot be relied upon as an authority in the instant case. All of which is also to be considered in the light of the fact that in the Terrell Case no question of indebtedness on the policy was presented—likewise a material matter of differentiation.

Plaintiff has laid much stress upon the fact that under the terms of the policy it had not become forfeited, but was to be considered as lapsed only. And so the policy did not become forfeited, for, if so, plaintiff would recover nothing. The use of the words "shall be treated as lapsed only" in the connection there used was well explained by the Tennessee Court in the Mills Case, supra, saying: "When the policy lapses it becomes, so to speak, in liquidation under its terms."

■ Plaintiff further insists the plea was bad in form, in that the pleader, in referring and quoting from the contract, used the words "said contract provided in part," equivalent, she insists, to the words "among other things," an expression condemned in American National Ins. Co. v. Walstrom, 226 Ala. 402, 147 So. 595, 596, and authorities there cited. But the language of the plea in the instant case is more full and complete than any of those treated in these authorities. The theory of the decision was that, for aught appearing, the "other things" referred to may have controlled the particular provision quoted. The plea here, however, clearly shows that nothing in the policy contract controls or qualifies the quoted provision, and therefore gives no foundation for the application of the rule.

The conclusion is therefore reached that plea 3 was not subject to the demurrer interposed, and that to sustain the same was error to reverse. The judgment will be reversed and the cause remanded.

Reversed and remanded.

ANDERSON, C. J., and BOULDIN and FOSTER, JJ., concur.