198 So. 595

**EQUITABLE LIFE ASSUR. SOC. OF THE UNITED STATES v. BRANDT.**

**6 Div. 610.**

Supreme Court of Alabama.

Oct. 10, 1940.

Rehearing Denied Nov. 22, 1940.

Howze & Brown, of Birmingham, for appellant.

Bradley, Baldwin, All & White, of Birmingham, for appellee.

264

FOSTER, Justice.

This suit is by appellee, the beneficiary of two policies of life insurance on her husband, who died.

Policy No. 3,632,902.—Count No. 2.

The defendant, appellant, claimed in its pleas and evidence that the policy had lapsed for nonpayment of a quarterly premium due November 20, 1935, and that the surrender value at that time was not sufficient to extend its benefits to the time of his death,—all dependent upon certain quoted provisions of the policy, as follows:

"The Equitable Life Assurance Society of the United States, a mutual company organized July 26, 1859, hereby insures the life of Abrams Brandt (herein called the insured) and agrees to pay at its Home Office in the city of New York Ten Thousand Dollars (the face of this policy) to his wife Mena Weil Brandt beneficiary (with the right to the insured to change the beneficiary or assign this policy) upon receipt of due proof of the death of the insured, provided premiums have · been duly paid and this policy is then in force and is then surrendered properly released. * * *

"This insurance is granted in consideration of the payment in advance of Two Hundred Fifty and 80/100 Dollars and of the payment annually thereafter of a like sum upon each 20th day of February until the death of the insured. * * *

"Payment of Premiums. All premiums are payable in advance at the Home Office, or to any agent or cashier of the society upon delivery on or before their due date, of a receipt signed by the president, a vice-president, secretary or treasurer, and countersigned by said agent or cashier. This policy is based upon the payment of premiums annually; but premiums may be paid, subject to the society's written approval, in semi-annual or quarterly installments at the society's adopted rates for fractional premiums, provided that in the event of the death of the insured any unpaid portion of the premium for the then current policy year shall be deducted from the amount payable hereunder.

"Grace. A grace of thirty-one days, subject to an interest charge at the rate of 5% per annum, will be granted for the payment of every premium after the first, during which period the insurance hereunder shall continue in force. If death occur within the days of grace, the premium for the then current policy year or any unpaid installments thereof shall be deducted from the amount payable hereunder.

"Except as herein expressly provided, the payment of any premium or installment thereof shall not maintain this policy in force beyond the date when the succeeding premium or installment thereof becomes payable.

"Reinstatement. If this policy shall lapse in consequence of the non-payment of any premium when due, it may be reinstated at any time upon the production of evidence of insurability satisfactory to the society, and the payment of all overdue premiums, with interest at 5% per annum, and upon the payment with interest or the reinstatement of any indebtedness to the society secured by this policy.

"Options on surrender or lapse. After three full years' premiums have been paid hereon, upon any subsequent default in the payment of any premium or installment thereof, and within three months after such default, this policy may be surrendered by the insured (or assignee if any) who may elect one of the following options:

"(a) To receive the cash surrender value of this policy; or

"(b) To purchase non-participating paid-up life insurance payable at the same time and on the same conditions as this policy, but without double indemnity or total and permanent disability benefits; or

"(c) To continue the insurance for its face amount (and any outstanding dividend additions) as paid-up extended term insurance for the period shown in the opposite table, or for such further period, as the dividend additions (if any) will purchase, but without future participation, or right to loans, or double indemnity, or total and permanent disability benefits.

"In the event of default in the payment of any premium or installment thereof after this policy has been in force three full years, if the insured (or assignee if any) does not select one of said options within three months of such default, the insurance shall be continued as provided under option (c).

"If there be any indebtedness against this policy, the cash surrender value shall be reduced thereby, the paid-up insurance shall be reduced proportionately, and the extended term insurance shall be for the face amount of the policy less the indebtedness and for such period as the reduced cash value will purchase.

"The insured's right to change, or assign or terminate this policy shall extend to any paid-up insurance accruing hereunder. * * *

"Loans. At any time, while this policy is in full force, after three full years' premiums have been paid, the society will advance to the insured (or assignee if any) on proper assignment and delivery of this policy, and on the sole security hereof a sum which, with interest, shall not exceed the cash value at the end of the then current policy year (as stated in the opposite table), less any indebtedness to the society hereon, provided all premiums or installments of the same have been fully paid to the end of the then current policy year. Interest shall be at the rate of 6% per annum, and shall be payable on the premium anniversary date of this policy. The loan may be increased by the cash value of dividend additions credited to this policy, if any. If the loan is for a purpose other than to pay premiums on policies in the society, the granting of the same may be deferred by the society for a period not exceeding ninety days after receipt of application therefor. Failure to repay such loan or to pay interest thereon shall not avoid this policy unless the total indebtedness hereon shall equal the total loan value, nor until thirty-one days after notice shall have been mailed to the insured and to the assignee of record, if any, to their addresses last known to the society."

It is alleged that insured had made a policy loan on August 2, 1935, of $1,121.68 which was wholly unpaid on November 20, 1935, when default was made. The anniversary of the policy would be February 20, 1936. He died February 3, 1936, within three months after the default, and after the thirty-one days of grace. There was a gross surrender value on November 20, 1935, of $1,157.50. If interest is computed on the principal of the loan from August 2, 1935, to November 20, 1935, at six per cent., it would be $20.28, making the loan with interest to that date amount to $1,141.96, and if that is deducted from the gross surrender value of $1,157.50, there is left only $15.54, which was sufficient to carry the policy for the amount of its gross sum of $10,000, less $1,141.96 or $8,858.04, from November 20, 1935, to, but not including, January 30, 1936, or four days prior to the death of insured, but not to that date.

Appellee contends first that under the terms of the policy and loan agreement, there should be no interest calculated in this transaction, since none was payable until the anniversary date of the policy, February 20, 1936, and that thereby the amount of the loan should be computed on the basis of its principal without interest as of November 20, 1935, and when so the balance of the surrender value would be sufficient to extend the policy to a date beyond that of the death of insured on February 3, 1936.

Appellee contends next that by virtue of the features of the policy which we have quoted, it was automatically extended for three months, in which option rights must be exercised, and since he died within that time, without exercising that right, his death is within the life of the policy thus extended.

The pleas 8 to 26 allege that the policy is to be interpreted by the laws of New York, to which there is no contention if that law is properly pleaded. Appellant in those pleas undertook to set out the laws of New York in connection with the contentions above noted. Demurrer to them was sustained. The case was then tried upon principles applicable to Alabama contracts of that sort.

Appellant contends that at least some, perhaps all of its pleas, were not subject to the demurrer. Our attention is first directed to the sufficiency of them in the light of the principles which control when an attempt is made to rely on the laws of

266

another state. We will note those principles as we interpret our decisions on the subject.

■ One of our cases on that subject has been· so often cited as to make it a leading case, and if it is understood and carefully followed, there ought not to be confusion on the subject. We refer to Cubbedge et al. v. Napier, 62 Ala. 518, from which we quote as follows: "The law is matter of fact, which must be pleaded with the certainty that any extrinsic fact must be pleaded, which is essential to a right of action, or to constitute a defense. The pleader may be well satisfied of his construction of the foreign law, and may assert it as the law itself; that is not his province. The law must be substantially stated; and the facts ·must be averred which are supposed to constitute its violation. Then, the court can determine whether the facts—the foreign law, which is but a fact—and the transaction supposed to offend it, compel a repudiation of the contract."

The idea is well illustrated in that case, when the court makes the following observation: "It is further averred, the rate of interest fixed by the law of Georgia was :seven per centum per annum, and that the ·effect of the law was to annul and make ·void contracts for usury, the principal sum and interest being recoverable. The answer then proceeds: 'And that at the time of the execution and delivery of said note ·and mortgage, under and by virtue of said :statute laws of Georgia, all titles to property made as a part of an usurious contract or to evade the usury laws of such State are void.' Subjecting these averments to the rules we have stated, they are not averments of fact, but of the conclusions of the pleader."

■ The objection there is to a statement of what is the effect of the law, and the conclusion of the pleader that under the Georgia law usurious contracts are void, whereas he does not set out the Georgia law which makes them void.

When such law is embraced in a statute of another state, a plea might with best form set it out in the language of that statute. When the statute as written is only a part of the law of that state, and it is affected by other facts of a legal nature existing there, the question is what is the "law altogether, 'as shown by exposition, interpretation, and adjudication.' * * * The exposition, interpretation and adjudication may never have been evidenced by books or writings; but may, nevertheless, have become well understood, as the rule of law deduced by the court from the written words of the Code, upon a particular state of facts. Upon such a question, the testimony or opinions of competent witnesses, instructed in the law of that State, may be resorted to. * * * The mere contents [of the act], indeed, might often mislead persons not familiar with the particular system of law." Walker v. Forbes, 31 Ala. 9, see page·11.

If "the law altogether" is merely as stated in a statute, the statement of it in the pleas as it appears in the statute would seem to serve all purposes. If such law appears only in one or many decisions of that state, the best practice is not to copy such opinions, certainly not all of them, but an epitome of the law stated in them as a fact. A fair illustration is as often set forth in a headnote of the legal principle declared in the opinion. · The plea may or not use the words of the opinion or headnote. But it should not express the conclusion of the pleader as to what the holding is. Moreover, a holding in one case may be modified in another, or even overruled. The pleader need not mention any opinion of that court, and should not without a statement that it expresses the law of that state in effect at the time material in the suit. Under those rules the pleader should not assert that under or according to the law of that state one may or may not do an act, or that a certain status should be treated in a certain way. It is thereby pleading the effect of the law,. not stating what the law is. The foregoing discussion is in substance the holding of our cases. See Forsyth v. Preer, 62 Ala. 443; Lomb v. Pioneer Savs. & Loan Co., 96 Ala. 430, 11 So. 154; Sovereign Camp, W. O. W. v. Pritchett, 203 Ala. 33(2), 81 So. 823; Dawson v. Dawson, 224 Ala. 13, 138 So. 414.

This rule seems to be well supported elsewhere. 59 Corpus Juris· 1208; Angell v. Van Schaick, 132 N.Y. 187, 30 N.E. 395; 49 Corpus Juris 78, section 69; Norton v. Crescent City Ice Mfg. Co., 178 La. 135(6), 150 So. 855; Crandall v. Great Northern Ry. Co., 83 Minn. 190, 86 N.W. 10, 85 Am.St.Rep. 458; Musser v. Musser, 281 Mo. 649, 221 S.W. 46.

■ In plea 8 defendant sets out a copy of certain provisions of the policy sued on and alleges facts which show that the contract is governed by the laws of New York,

and sets out in full sections 88 and 101 of the Insurance Law, Consolidated Laws of New York, c. 28, and states that they were in effect on January 1, 1910 (a date prior to that of the policy sued on), and continued in effect until after the death of insured. So far there is no objection to the form. The plea then makes certain allegations of fact applicable to all the quoted features above mentioned. It then proceeds to set out a short extract from the opinion of the New York Court of Appeals, being the court of last resort, in a named case, expressing an established principle. It then states that another certain case in construing a former statute similar to section 101, supra, held to a certain effect. That statement is but the expression of the pleader's opinion, not a statement of the New York law.

There are certain quotations from other opinions of that court of more or less pertinence, and one copied in full in the plea. What is the "law altogether," including the statute and its interpretation, is not in this plea stated in such manner and form as to present an issue of fact respecting the exact law of New York on the subject. Such form of pleading is prolix, cumbersome and violative of the rules above mentioned for pleading the law of another state.

Many of the pleas adopt those features of plea 8. This violates the rules mentioned.

■■■ Plea 15 adopts all of plea 8 which includes the terms of the policy and sections 88 and 101 of the statutes, supra, and adds the following:

"Defendant avers that it is the law of the state of New York that where the above quoted provisions of the statute laws of New York have been substantially embodied in a policy of life insurance that at the expiration of thirty-one days from the due date of a premium which is not paid, the policy lapses and becomes of no force and effect except as to the right of the insured, or assignee, or owner of the policy to elect one of the above quoted options given by the policy within three months after the due date of the premium which was not paid, and the right to reinstate the policy as above provided, and where more than thirty-one days after the due date of the premium which was not paid and less than three months thereafter the insured dies without the policy being reinstated and without election being made, the insurance is continued as said

paid up extended term insurance as provided in option (c) hereinabove quoted from the due date of the premium which was not paid.

"Defendant avers that a quarterly premium on said policy fell due November 20,. 1935, which was not paid on or prior to said date, nor within thirty-one days thereafter.

"Defendant avers that the assured in said policy prior to November 20, 1935, had under the loan provisions of said policy quoted in this plea borrowed on the sole security of the policy, and in accordance with its terms, and that the difference between the cash surrender value of said policy and the amount due on said policy loan on November 20, 1935, was not sufficient to continue the insurance as paid-up extended term insurance without future participation or right to loans or double indemnity or total and permanent disability benefits, in the amount provided in the quoted provisions of the policy from November 20, 1935, to date of death of insured."

It is our view that this plea conforms to the rule relating to the pleading of the law of another state. It may be proven by the statutes mentioned and decisions of the courts of New York, and by the testimony of competent witnesses. Section 7710, Code; Peet v. Hatcher, 112 Ala. 514, 21 So. 711, 57 Am.St.Rep. 45, Walker v. Forbes, supra.

Plea 17 adopts the same features of plea 8, and adds averments of like import. For like reason this plea is not subject to the objection mentioned.

Plea 25 is in substantially the same legal status in this respect.

It is not necessary for us to analyze the other pleas setting up the laws of New York. Defendant would be entitled to their benefit under pleas 15, 17 and 25, the form of which we approve. If those pleas correctly state the law of New York, the facts alleged show that at the time of the death of assured, the policy had lapsed and nothing was payable under its terms.

■■■ Plea 2 sets up the facts contained in the other pleas, but without allegations showing that the transaction is governed by the laws of New York, and without undertaking to set out the law of that state. It therefore invokes the Alabama law.

268

Since we have held that the pleas filed sufficiently invoke the New York law, and counsel for both parties agreed in oral argument that the transaction is controlled by that law, if sufficiently pleaded, a definitive expression of Alabama law would serve no useful purpose here. But we think it would not be out of place to make some observations as to our cases on the subject.

In Equitable Life Assurance Society v. Golson, 159 Ala. 508, 48 So. 1034, 1035, we have examined the original record. The court sustained demurrer to the pleas whereupon defendant declined to plead further and judgment was rendered for plaintiff. The policy is not set out in the record, and none of its terms appear except as quoted in the opinion which is called the nonforfeiture clause; and it is not correctly copied in the opinion, as printed in the Report of it.[1] It should be "for not less than three complete years." The word "not" is omitted. But that is not here material. The opinion was founded on the fact that there was no clause making a failure to pay the premium work a forfeiture. No such clause is set out in the pleas. Assured died in the six months in which he had the right to surrender the policy after default and obtain a paid-up policy. There was no other option. But since there was no forfeiture clause expressed for nonpayment of premium, except as implied in the quoted "non-forfeiture" clause of six months, it was held that there was no forfeiture until after such period.

In North Carolina Mut. Life Ins. Co. v. Terrell, 227 Ala. 410, 150 So. 318, 319, 89 A.L.R. 1459, we have also examined the original record. The case was tried on a plea in short by consent and an agreed statement of facts, the substance of which is set out in the report of the case.

The grace period clause in the policy considered in both the instant case and the Terrell case, supra, provides that during that period "the insurance shall continue in force." In the Terrell case this clause is preceded by one which declares that "except as herein provided the payment of a premium or installment thereof shall not maintain the policy in force beyond the date when the next premium or installment thereof is payable." That clause also exists in the instant case, except that in it the opening part is "except as herein expressly provided." In the

Terrell case the clause authorizing the right to elect one of the three plans on surrender after default, but within three months, is under a heading "Non-Forfeiture Provisions"; whereas the heading of the same nature of the clause in the policy here under consideration is "options on surrender or lapse." In that case the facts did not show the amount of the net surrender value at the date of default nor the period of time when it would carry the extended insurance thereafter. That question was not treated and the facts did not make it an issue. The court did hold that the implied forfeiture provision to occur after the grace period was to be construed in the light of the "non-forfeiture" clause conferring the option right for three months, and in that case it was held that the latter clause extended the life of the policy for that period. There was no contention made or fact shown to determine whether the amount of the surrender value was sufficient to carry the policy to the date of his death. Where that is made an issue and the facts show an insufficient amount for that purpose, the question is not a settled one in this State by virtue of those cases.

The case of Columbian Mut. Life Ins. Co. v. Vasser, 230 Ala. 284, 160 So. 696, has a bearing also on this question, but does not decide it. See, also, Penn Mut. Life Ins. Co. v. Fiquett, 229 Ala. 203, 155 So. 702.

We leave the question in Alabama where we find it,—not definitely decided as applicable to the facts of this case.

■ There is also a question as to the right of the insurer to compute interest on the policy loan to the date of default. If no interest is included, the amount of the loan, it is claimed, when deducted from the amount of the surrender value at that time, would leave a sufficient amount of surrender value to extend the policy to the date of the death of insured. This question is also governed by the law of New York. Cubbedge v. Napier; 62 Ala. 518, 33 Corpus Juris 184; Hanrick v. Andrews, 9 Port. 9.

■ And plea No. 12, which sets up this situation, undertakes to state what the law of New York is, but in doing so expresses a conclusion of what the New York courts held, but does not state such law in positive terms. That law not being properly pleaded we will treat the question

as controlled by Alabama law, as we understand it. We do not suppose there is any difference in this respect among the states.

■ The anniversary of the policy was February 20, 1936. A quarterly premium payment was due November 20, 1935, which was not paid. The policy loan was made August 2, 1935. The precise question is whether on November 20, 1935, the amount of the debt on account of such loan should have interest from August 2 to November 20, 1935, added to the principal, to fix an amount to be deducted from the surrender value. That question involves an interpretation of a feature of the policy and loan agreement. The policy provides: "Interest shall be at the rate of 6% per annum, and shall be payable on the premium anniversary date of this policy." The provision of the loan agreement is as follows:

"1. Interest shall be payable to the society from the date of such advances at the rate of 6% per annum (or such lower rate as may be stated in said policy or from time to time established by the society) and, unless otherwise stated in said policy such interest shall be payable upon the next premium anniversary date and annually thereafter. Interest if not paid when due shall be added to the existing loan and shall bear interest at the same rate.

"2. Unless repaid to the society prior to default in payment of any premium while said policy is in force all said advance and any interest thereon shall become due to the society:

"Or (c) Upon default in payment of any premium on said policy. In that event the total of all advances and any interest thereon shall not be repayable in cash but shall be deducted by the society from any sum (including the surrender value of dividend additions, if any, to said policy) otherwise applicable to the purchase of paid-up or extended term insurance."

The provision that on default "the advance and any interest thereon shall become due," and that "all advances and any interest thereon shall not be repayable in cash but shall be deducted by the society from any sum otherwise applicable to the purchase of extended insurance", establish two outstanding facts in this connection. One is that on default the policy loan becomes due, with "any" interest on it; and the other is that it is not thereby payable in cash, but is only subject to be used to deplete the sum then available to purchase paid-up or extended insurance.

What is meant by "any" interest, when considered in connection with that status and those facts? It may be conceded that there was no default then in the payment of interest which would justify a forfeiture on that day though the amount of the interest then accrued and then computed with the principal would have exceeded the amount then available to purchase extended insurance. This is so because there was in that connection no default in the payment of interest, since it was not then payable in money. The policy should not be forfeited for the failure to pay a sum of money at a time when it was not payable in money under the terms of the contract. New York Life Ins. Co. v. Shivley, 188 Ark. 1044, 69 S.W.2d 392; Roeser v. National Life Ins. Co., 115 Pa.Super. 409, 175 A. 887. See, also, Penn Mut. Life Ins. Co. v. Brancroft, 207 Ala. 617, 93 So. 566, 28 A.L.R. 1102; Jones v. Mutual Life Ins. Co., 216 Ala. 437, 113 So. 314, 54 A.L. R. 1068.

We have a unique sort of debt to deal with—one which does not become due and payable by compulsion except by the use of the policy to that end, in accordance with it and the loan contract. The interest is payable on the premium anniversary date. This means of course unless some other clause stipulates otherwise. But default in paying a premium, it is provided in the loan contract, makes "said advance and any interest thereon, then become due, not in the sense that it shall be payable in cash but only for the purpose of deducting it from the amount applicable to the purchase of paid-up or extended term insurance.".

It is therefore not a debt such as is ordinarily created by an advance of money with a promise, express or implied, to repay it in money regardless of the sufficiency of the security. It is more in the nature of an advancement in anticipation of the maturity of a sum which will be payable in the future, but to bear interest until that time, computed annually on the anniversary date and compounded if not then paid. Penn Mut. Life Ins. Co. v. State, 223 Ala. 332, 135 So. 346; Board of Assessors v. New York Life Ins. Co., 216 U.S. 517, 30 S.Ct. 385, 54 L.Ed. 597;

Reynolds v. Northwestern Mut. Life Ins. Co., 298 Mass. 208, 10 N.E.2d 70, 113 A. L.R. 603.

It is made to bear interest at six per cent. per annum from date. This means, we think, that it should be computed to the time when it may be either paid in money or when it is paid by an application thereto of the fund out of which alone its collection may be enforced. The fact that it is not payable in cash at the time of such application is not sufficient to support a contention that interest should not be included to that date. That date in the instant case is when default was made on November 20, 1935, to pay an installment of the premium then due to be paid to maintain the policy (not now considering the grace period). The principal, by explicit terms, then became due, but payable in that manner alone. The general rule is that interest becomes due when the principal is due, unless otherwise provided. 33 Corpus Juris 187, section 28. The fact that it is payable annually at the date of the anniversary is for the purpose of affording an opportunity then to pay in money, and even a necessity to do so, sometimes to prevent a forfeiture, dependent upon the amount compared with the values applicable to its payment.

Provisions similar in many respects to those in the instant case were carefully considered in Reynolds v. Northwestern Mutual Life Ins. Co., supra, in connection with the identical question now under consideration. That court held that the provision by which the interest was payable annually was not controlling, and that interest should be computed to date of default, though it was not the anniversary of the policy. The due date was said to mean the one in which it is capable of being paid in case assured chooses to repay the advance with interest. And it was held that it had "no application to the adjustment of accounts incident to the conversion of the original insurance into extended term insurance." [298 Mass. 208, 10 N.E.2d 73, 113 A.L.R. 603.] See, also, Smith v. John Hancock Mutual Life Ins. Co., 195 Ark. 699, 114 S.W.2d 15.

We think there is reversible error as to count 2 for policy No. 3,632,902, and that the judgment should be reversed as to it. See 5 Corpus Juris Secundum, Appeal and Error, 1418, § 1916.

We will now consider count 1, based upon policy No. 3,079,250, though not so numbered in the count. The ruling of the court on the pleadings relating to this claim and giving the affirmative charge for plaintiff present the legal aspects of the contentions in this respect.

The policy was issued December 28, 1922, and the premiums, payable quarterly, were kept up until the installment due September 28, 1935, was due, but was not paid. The transactions between the parties occurred in New York, where were located the home office of insurer and the residence of insured.

The next act in point of time, here material, was on November 8, 1935, after expiration of the grace period in which to pay the installment due September 28, 1935, the metropolitan cashier of insurer in New York at a different office location returned to the home office the official receipt for that installment showing that it was not paid. On November 14, 1935, said cashier mailed to insurer a notice that the policy had lapsed on account of such default. On November 15, 1935, insurer mailed to insured a notice of the installment to be due December 28, 1935, of $77.40, in which it was stated: "If any claim for or right of forfeiture, or any default on the part of the holder of said policy now exist, the society does not by this notice waive the same." There was enclosed with it a dividend notice which provided: "Upon condition that premium payments for the current policy year shall have been completed, this policy will, on the date stated, be entitled to the dividend shown below." The amount of the dividend was stated to be $47.80.

Insurer had many thousand policyholders to whom notice was given under the New York law not less than fifteen days nor more than forty-five days before the premium was due. On the 15th or 16th of each month they sent out such notices as would comply with that requirement. In doing so, they made a check of delinquencies as of October 31, 1935, and as their records did not then show a delinquency, the notice was mailed on the next November 15th.

On January 28, 1936 at 7:30 P. M., insured mailed to appellant a check for $29.60, with respect to this policy, which, with $47.80, dividend, made the full amount of the premium installment of $77.40, the amount mentioned in the notice. This was received in the forenoon of January 29, 1936, at the cashier's office, separate and

apart from the home office. This was referred to the mail remittance section of the cashier's office. The records were there checked and on finding a failure to pay the the premium due September 28, 1935, it was referred to the restoration division of the same office, where it was received January 30, 1936. It was then sent to the medical section of the home office January 31, 1936, asking the requirement for reinstatement. This was on Saturday, and the home office was closed all that day as usual, and it was also closed on Sunday, February 1st. The restoration division did not receive a return from the medical division until February 3, 1936, which was the day on which insured died. On that day the restoration division composed a letter to insured advising him of the medical requirements, and that the check was returned. This letter was written and ready to be mailed February 4, 1936. But before it was mailed, insurer received information that insured had died. On February 5, 1936, insurer wrote to the estate of insured advising that the policy lapsed for nonpayment of dues of September 28, 1935. That letter with a return of the check was received by this plaintiff. This policy was not due to be reinstated without a medical examination, since 'there had elapsed more than three months after default.

On September 28, 1935, the cash surrender value was less than the policy loan. Insured died more than three months after the default of September 28, 1935.

By the rulings of the court those facts were held to constitute a payment of the installment due December 28, 1935, sufficient to extend the insurance to the date of insured's death.

█ The contention is that those facts do not show the payment of that premium installment, including its acceptance as such, and as evidence of that, it is claimed that an insufficient amount was included in the check, because the condition on which the dividend was due was that all premium payments up to that date had been met, and that the one due September 28th had not been met. Moreover, it was insufficient because it did not include that due September 28th, and that it was insufficient even with a proper amount without a medical examination.

But all those requirements could of course be waived by the insurer and were waived if the insurer accepted the check sent by insured as a tender of the amount necessary to pay the installment due December 28th.

█ █ Two letters to insured, one of November 14, 1935, and one November 15, 1935, are here material. That of November 14th, from the cashier, advising of the lapse by virtue of nonpayment of the September installment. That of November 15th notifying him of the amount of the December premium and dividend, but said to be conditioned that there has been no default. The two letters should be taken together. Insured may have a right to assume that they came out of the same office and with full knowledge of all the facts. Though he must have known that he had not paid the September premium, and that on November 14th no one else had done so, he also may have supposed that another letter from the same office giving him notice of the December installment would probably not have been sent if at that time it had not been paid, or if insurer did not have some other fund to apply to its payment, and on that account considered as paid. It was scarcely to be supposed that insurer intended to release it without payment. A reminder is not always of itself the treatment of a policy as in force. Provident Life & Acc. Ins. Co. v. Hollums, 213 Ala. 300, 104 So. 522.

█ But one not versed in insurance accounting and factual details is not supposed to know much about the financial value of a policy of insurance. Notwithstanding the notice of November 14th, we cannot say as a matter of law that the letter of November 15th could not be misleading. On account of that status under all the circumstances, we cannot say as a matter of law that he was not mislead into believing that he could satisfy all demands by paying the amount named in the letter of November 15th. If so, it should have been done within the grace period of thirty-one days, so that January 28, 1936, was the thirty-first day. It should have been paid that day. It was mailed that day, and received the next day —one day late; but the custom of the insurer was to accept such payments as in the grace period. Insured heard nothing from it before he died February 3, 1936. That was five days after it was received. Did silence for five days after receipt of the check constitute a legal acceptance in view of the facts which are shown to have occurred in that time in handling the check by insured? A payment can only result from the mutual agreement of the parties. 46 Corpus Juris 586, 587, note 17 (a).

The mutual assent must be manifested by each party to the other, and except as so manifested it is unimportant. Secret intent is immaterial, only overt acts are considered in determining such assent. The fundamental basis of a contract at common law is reliance on an outward act constituting a promise. Assent need not be expressed in words. But both acts and words have the meaning which a reasonable person would put upon them in view of the circumstances known to them. Any conduct of one party from which the other may reasonably draw the inference of a promise is effective in law as such. See the discussion in 1 Williston on Contracts, Revised Edition, sections 22 and 22—A, pages 41 to 44.

 Whether a transaction constitutes a payment depends upon the mutual intent of the parties manifested to each other. That intent may be implied from acts and omissions to act. When one tenders an amount as a payment, the intent of the payee to accept it as such must be inferred from his conduct with respect to it made manifest to the payor. If it is to be held for investigation, or pending the doing of something else, he should notify the payor at once. If he retains it without expressing any dissent or condition, it will be considered after a reasonable time to have been accepted as tendered. When that status once occurs it cannot be altered except by mutual consent.

 Whether the payee acted with due diligence and in a reasonable time to notify the payor is a question of fact for the jury to be inferred from the circumstances, except where only one reasonable inference may be drawn from them.

Many authorities have been cited by counsel in which certain circumstances were held to waive a forfeiture for nonpayment of premium dues and notes, and others were held not to waive such forfeiture. They all rely on established principles and on facts materially different from those now under consideration.

 We think that if the insurer here led insured to entertain the reasonable belief that his policy would not be forfeited if a certain amount is paid by a certain time, and that amount was paid in the customary manner, and if the circumstances known to the insured were sufficient to impress a reasonable man that its payment at the time, and in the manner and amount, as was done, would be acceptable, and that it was accepted by the insurer, and he did entertain such belief, it would save the policy from forfeiture for nonpayment. The following cases support those views: United States Life Ins. Co. v. Lesser, 126 Ala. 568, 28 So. 646; Security Mutual Life Ins. Co. v. Riley, 157 Ala. 553, 47 So. 735; Hanover Fire Ins. Co. v. Wood, 209 Ala. 380, 96 So. 250; United States Health & Acc. Ins. Co. v. Goin, 197 Ala. 584, 585, 93 So. 117; Pacific Mutual Life Ins. Co. v. Hayes, 202 Ala. 450, 80 So. 834; Southern States Life Ins. Co. v. Dunckley, 226 Ala. 588, 148 So. 320; 14 R.C.L. 1181, section 357, page 1190, section 367, note 12.

 While the breach of a condition which avoids a policy cannot be waived after a loss without a new consideration, or principles of estoppel (Great American Ins. Co. v. Dover, 219 Ala. 530, 122 So. 658), this rule does not apply to the waiver of a forfeiture when the waiver is alleged to have occurred before the loss. American Ins. Co. v. Millican, 228 Ala. 357, 153 So. 454; Washburn v. Union Central Life Ins. Co., 143 Ala. 485, 38 So. 1011; Southern States Life Ins. Co. v. Dunckley, supra.

 The question of whether insured had a right to believe and did believe as a reasonable man that his check of January 28, 1936, had been accepted by the insurer in the absence of any notice to him whatever in respect to it until he died on February 3, 1936, is not one of law, but an inference of fact for the jury. The affirmative charge should not have been given as to it for the plaintiff, nor the defendant either. We will not examine closely the rulings of the court in this respect. What we have here observed is sufficient to express our views for another trial.

Reversed as to both counts, and remanded.

GARDNER, C. J., and BOULDIN and LIVINGSTON, JJ., concur.