Joseph Pavano v. Western National Insurance Company

Court of ·Common Pleas     Hartford County     File No. 51012

Memorandum filed March 24, 1952.

*Leo V. Gaffney*, of New Britain, for the Plaintiff.

*Gross, Hyde & Williams*, of Hartford, for the Defendant.

COTTER, J. This is an action in which the plaintiff, as mortgagee, seeks to recover under an indorsement attached to a fire insurance policy for loss occasioned by a fire in the insured premises. The jury returned a verdict for $4903.20 for the plaintiff.

On February 1, 1949, Carmen Guastamachio set fire to the insured premises, 54 West Main Street, New Britain, owned by his uncle, John Guastamachio. John Guastamachio purchased the restaurant and equipment contained in the premises in September, 1948, from the plaintiff, Joseph Pavano, for $14,000. He paid $5000 in cash. The balance was to be paid in accordance with a note in the amount of $9000 secured by a chattel mortgage on the fixtures and equipment in the restaurant.

On September 15, 1948, the defendant, the Western National Insurance Company, issued a fire insurance policy insuring John Guastamachio, d. b. a. Guasta Restaurant, against loss by fire and other hazards. At the same time it attached an indorsement to the policy which, among other things, stated "Loss, if any, under this policy shall now be payable to Joseph Pavano . . . as his interest may appear."

After the loss had occurred it was established that the fire was caused by a wilful and incendiary burning. Although businesss in the restaurant was not too successful at the time and the arsonist was a nephew of the owner, no evidence was shown which connected the incendiary fire to the owner of the restaurant. Likewise, these acts of incendiarism were never associated with the plaintiff in this action, Joseph Pavano, the chattel mortgagee.

The defendant insurance company now claims that because of the incendiary origin of the fire the mortgagee has no standing to bring suit in his own name in this court, or if he has such standing, he is precluded from recovery because of that fact.

. It is conceded that there are two forms of mortgagee indorsement common to fire insurance policies: (1) The "union mortgage clause"; and (2) the "open mortgage clause." The former has been construed to create a direct contract between the insurance company and the mortgagee so that the mortgagee may sue and otherwise act as a primary party under the insurance contract.

The latter clause does not bring the mortgagee and insurance company "into contractual relations with each other either directly or through assignment of the policy." The plaintiff mortgagee becomes a conditional appointee of the insurance company. That is the situation of the plaintiff in this case. As such appointee he is entitled to receive so much of any sum that may become due under the policy which does not exceed his

interest as mortgagee. *Collinsville Savings Society* v. *Boston Ins. Co.,* 77 Conn. 676, 679, 680; *Savings Bank of Ansonia* v. *Schancupp,* 108 Conn. 588. The mortgagee stands in the position of the assured and is subject to the conditions of the policy to which the assured would be subject, as well as any defenses which might be interposed against the assured. *Elmore* v. *Royal Ins. Co.,* 154 Kan. 93.

Wilful incendiarism by someone other than the insured, and without his consent or connivance, does not bar recovery. There must be a finding of knowledge, authorization, or ratification of any such burning by the assured before it will preclude his recovery upon the policy. 6 Couch, Insurance, p. 5330; *Orient Ins. Co.* v. *Parkhill,* 170 F. 2d 510, 511. This is true, and no presumption of participation is raised, even in a case where the son of the insured was claimed to have set the fire. *Hawkins* v. *Glens Falls Ins. Co.,* 115 W. Va. 618, 629. And it is likewise true where the relationship of husband and wife exists. *Fiebelman* v. *Manchester Fire Assurance Co.,* 108 Ala. 180, 200.

The jury were fully instructed as to those rules of law.

After the loss had occurred a proof of loss was prepared by, or with the assistance of, a Mr. Tourison, an adjuster and agent for the defendant insurance company, now deceased. It was testified that Mr. Tourison met on several occasions with the assured, John Guastamachio, the mortgagee plaintiff, Joseph Pavano, and others, in connection with the preparation of the proof of loss and other matters connected with the adjustment of the loss. The proof of loss, plaintiff's exhibit D, was dated March 25, 1949, and signed by the assured. It set forth the claim of $4320, together with all the details required in the proof of loss form. In addition, there was attached to it a detailed schedule with the various items of loss. Many of the items were arrived at from bids submitted. The bids themselves were set forth in this itemized schedule, and it was also testified that Mr. Tourison received these bids, collected them and, together with bills and invoices, made up the proof of loss and the schedule with John Guastamachio and Joseph Pavano. There also appeared above the signature of the assured the statement "This statement is made under the penalties of perjury."

The proof of loss was received by the Western National Insurance Company on March 29, 1949, in its loss department, as shown by a company stamp placed upon it. In May, 1949,

Attorney Wallace Brown, acting for the insurance company, wrote letters stating that he was not satisfied with the proof of loss and rejected it, at the same time asking for examination under oath, together with production of books, papers, etc.

John Guastamachio, who was called as a witness for the defendant insurance company, testified that he went to Attorney Brown's office in response to letters and inquiries from him and discussed these matters with him. He also testified that he had no papers, books, accounts, etc. because they had been destroyed in the fire. Thereafter, on December 22, 1949, Guastamachio signed a document entitled "General Release" in which he purported to release and forever discharge the Western National Insurance Company. It was further testified to by Guastamachio that the only thing he was interested in at that time was to receive a rebate of the unearned premium under the fire insurance policy. This unearned premium under the policy, which was canceled by the company as of the date of the fire, amounted to $157.66. This unearned premium ran from the date of the fire to the expiration date of the policy and was returned to Guastamachio by the company at or about the time he executed this so-called "General Release." Prior to this, on March 2, 1949, Guastamachio had assigned all his interest in and to the insurance money to be paid as a result of the fire to Joseph Pavano and received a release of his obligation under the chattel mortgage and note from Joseph Pavano.

The jury were fully instructed that the plaintiff must prove that the requirements of the policy had been met in connection with the conditions contained in the insurance contract. They were also instructed that it was for them to determine whether or not the proof of loss met the requirements of the insurance company. There was nothing in the trial of the case to show any particular form of proof of loss was required under the policy. *Martoni v. Massachusetts Fire & Marine Ins. Co.,* 106 Conn. 519, 523, 524.

The jury were fully instructed that it was a question of fact for them to determine as to whether or not the conduct and course of dealings had by the agents and attorneys for the insurance company created an estoppel as to the insurance company in connection with its defenses concerning the requirements in connection with furnishing proofs of loss, examination under oath, and production of documents for the use of the company. The jury were clearly told that the provisions of the

policy are conditions the breach of which puts an end to the insurer's obligation in the absence of estoppel or other excuse. *Curran* v. *Connecticut Indemnity Co.*, 127 Conn. 692, 695.

The course of dealings with the assured culminating in the release signed by him, which was drawn by the attorney for the company and in the attorney's office, was left to the considera-tion of the jury. An acceptance of a proof of loss may estop the company from claiming it was defective. *Cupo* v. *Royal Ins. Co.*, 101 Conn. 586, 593.

In one of the letters written by Attorney Brown, a portion of which was read in evidence, it was stated by him that one of the primary reasons for disallowing the proof of loss and the claim was that the fire was of incendiary origin. In fact, Attor-ney Brown in his argument in rebuttal to the jury told them that when the company first became aware of the loss and learned that it was caused by a fire of incendiary origin it felt that it was duty bound to reject the claim.

Where an insurer denies liability on other grounds, defects in a proof of loss may be of no import. *Daniels* v. *Equitable Fire Ins. Co.*, 50 Conn. 551. Although the estoppel is not pleaded, it may still be shown in evidence. *Fields* v. *Metropoli-tan Life Ins. Co.*, 132 Conn. 588. It is a question for the jury. *Equitable Life Assurance Society* v. *Brandt*, 240 Ala. 260, 134 A. L. R. 555.

At one time it was claimed by the insurance company that the assignment from Guastamachio to Pavano violated a con-dition of the policy. However, the only assignment which would invalidate the policy is an assignment of the policy itself, which was not claimed.

It is admitted that the indorsement was accepted and placed upon the policy by the insurance company. "[P]olicies cover the interest of the persons for whom they were intended by the parties taking out the insurance. . . ." 1 Couch, Insurance, p. 472, citing *Hooper* v. *Robinson*, 98 U. S. 528, *Sturm* v. *Boker*, 150 U. S. 312, and *Hagan* v. *Scottish Ins. Co.*, 186 U. S. 423; 29 Am. Jur. 215. In such a case it becomes a part of the con-tract of insurance itself even though the mortgagee is not a party to the contract. The policy would apply to those who were con-templated at the time the insurance was made and have an in-surable interest. 1 Couch, Insurance, p. 315. The provisions

of the policy are construed with reasonable strictness in favor of the insured. *Petello* v. *Teutonia Fire Ins. Co.*, 89 Conn. 175, 181.

The defendant not only recognized the plaintiff in the indorsement but states in the policy that "If loss hereunder is made payable, in whole or in part, to a designated mortgagee not named herein as the insured, such interest in this policy may be cancelled by giving to such mortgagee a ten days' written notice of cancellation."

One court has gone so far as to hold that where fifteen days' notice of delinquency on the part of insured shall be given to the mortgagee before any suspension or cancellation of the policy, an original misrepresentation by the insured will not affect the mortgagee's rights. *People's Savings Bank* v. *Retail Merchants Mutual Fire Assn.*, 146 Iowa 536; notes, 38 A. L. R. 374; 48 A. L. R. 124.

The loss payee has been permitted to sue in his own name on many occasions and no question has been raised as to his right to do so. *Inland Finance Co.* v. *Home Ins. Co.*, 134 Wash. 485, 236 Pac. 73; *Hill* v. *International Indemnity Co.*, 116 Kan. 109, 38 A. L. R. 362. "The decided weight of authority supports the proposition that the mortgagee may recover in his own name, either where his interest equals or exceeds the whole loss, or the whole value of the property destroyed, or where he is the one in whom the entire interest in the policy is vested, and therefore the real party to the contract . . . or where the whole amount due has been assigned and becomes vested in the mortgagee, or if . . . the whole amount due has become payable to him." 8 Couch, Insurance, p. 6715.

It has been held that the mortgagee's right of recovery under an indorsement cannot be defeated by an act of the assured after the loss has occurred. *Bergman & Co.* v. *Commercial Union Ins. Co.*, 12 Ky. L. Rep. 942; note, 38 A. L. R. 379. Upon the loss the defendant's liability had become fixed and the mortgagee had acquired rights in a cause of action which the declarations of the mortgagor could not affect or change. *Browning* v. *Home Ins. Co.*, 71 N. Y. 508; note, 38 A. L. R. 379.

The insurance company in writing the indorsement recognized Pavano as an indorsee and also wrote letters to Pavano in connection with the conditions of the policy. The company knew

that the present case was in suit and in spite of all of these dealings accepted a document from the assured Guastamachio entitled a "General Release" on December 22, 1949. The assured Guastamachio had several conferences with Mr. Tourison as the adjuster and agent for the insurance company and with Attorney Wallace Brown acting for the company. All of these matters were left to the jury in connection with the question whether or not all of the conditions and requirements of the policy had been met to permit recovery by the plaintiff. The instructions in this connection were as favorable to the defendant as it could expect. While the court does not question the well-intentioned motives of the company, yet one court has frowned upon it. "It would be strange if, after the mortgagee had brought such an action, the mortgagor could settle it without his consent, and equally strange if the mortgagor could impair the right of action before suit commenced." *First National Bank of Duluth v. National Liberty Ins. Co.,* 156 Minn. 1, 5, 38 A. L. R. 380.

The proof of loss stated, and it was also testified, that the amount of indebtedness due to the plaintiff from the assured was $7750. From all the evidence the jury could believe that the debt was $7750 and that the loss amounted to $4320.

The jury was also left the question whether or not interest in the agreed amount of $583.20 should be awarded to the plaintiff if they found that the proof of loss met the requirements of the policy under the rules as to the burden of proof which was upon the plaintiff. They so found that the plaintiff was entitled to a verdict in the amount of $4320, plus interest of $583.20, making a verdict in the total amount of $4903.20 which cannot be disturbed.

The motion to set aside the verdict is denied.