BRADLEY, Judge.
The defendant, Blue Cross and Blue Shield of Alabama, Inc. [hereinafter the insurance company] appeals from a final judgment and jury award in favor of the plaintiff in the amount of $1,584.30 and costs.
The action began with a complaint alleging the plaintiff and insurance company had entered into an agreement wherein the insurance company promised to insure the plaintiff and his wife for all medical and doctor bills. The insurance company allegedly breached the contract by refusing to pay hospital and doctor bills incurred from surgery performed on the wife. The insurance company alleged the wife’s condition was noticed before the effective date of coverage and that the contract contained a waiting period of nine months before benefits became available for any disease, condition or ailment which existed on or prior to the effective date of coverage. The insurance company moved for summary judgment and was denied. The case proceeded to trial before a jury. At the close of evidence for both sides, the insurance company moved for a directed verdict on the basis no estoppel was proven in the case. Counsel for the plaintiff answered waiver or estoppel was shown and there remained a sufficient question of fact for the case to be decided by the jury. The motion for directed verdict was then denied and the court proceeded to instruct the jury.
The record reveals the following pertinent facts:
Subsequent to March 1, 1972 the plaintiff’s wife was covered under her father’s insurance as a “dependent” by Blue Cross-Blue Shield of Tennessee. She was married to the plaintiff on November 15,1975. The Tennessee contract contains a provision that coverage of a child of an insured will automatically cease when such child is no longer a dependent. “Dependent” is defined under the contract as an unmarried child. The contract further provides that if such termination occurs, the prior “dependent” may within thirty days of the date coverage terminates apply to the corporation for its standard contract. Because a new contract would be issued without evidence of insurability, continuous coverage would result. The plaintiff’s wife, i. e. former dependent, did not apply within thirty days, however. Instead, her mother-in-law made a phone call to the insurance company on January 5, 1976 (fifty days after termination) and said her son had married; that his wife previously had insurance with Blue Cross and Blue Shield; and that they needed some insurance. The insurance company sent application forms and they were filled out by the plaintiff. A policy was issued and became effective February 10, 1976.
An ovarian cyst was discovered by the wife’s doctor on December 22, 1975. The plaintiff’s wife underwent surgery for the removal of the cyst on June 2, 1976. The plaintiff filed a claim for medical and hospital expenses and was denied coverage by the insurance company in a letter dated July 11, 1976. The letter stated that the contract had not been in effect the required nine months and referred the plaintiff to the provision pertaining to limitations and waiting periods. The pertinent provision reads:
PRE-EXISTING CONDITIONS — Benefits hereunder shall not be available to any member for any condition, disease or ailment, congenital or otherwise, which existed on the effective date of his coverage hereunder, whether manifested in any way or not, or for which medical or surgical treatment or advice has been rendered within one (1) year prior to the date his coverage hereunder became effective, until the member shall have been covered by a Blue Shield in-hospital medical benefit rider for a period of nine (9) consecutive months immediately preceding the date of his hospital admission.
In response to a letter written by the wife’s mother, a letter dated August 26, 1976 was sent stating that coverage was not effective until February 10, 1976; thus there was a lapse in coverage and previous *1042 denial of payment must be upheld. Thereafter, a third letter, dated October 20, 1976, was sent to the wife. It reads, in pertinent part:
We have been advised by the Tennessee plan that in order for you to receive continuous coverage from your father’s contract we should have been notified within 60 days from your date of marriage.
As we were not within 60 days we will be unable to give you original contract dates from your father’s contract. [Emphasis theirs.]
There are two issues to be resolved: (1) whether the letter of October 20, 1976 operates as an effective waiver and (2) whether the elements of estoppel are proven in this case.
The insurance company formally appeals from the judgment; however, it asserts that the denial of its motion for a directed verdict was erroneous and that as a matter of law it should have been granted. In reviewing the trial court’s refusal to grant a directed verdict, we will consider the evidence in a light most favorable to the plaintiff and will affirm if there is a scintilla of evidence to support the plaintiff. Carolina Casualty Insurance Co. v. Tisdale, 46 Ala. App. 50, 237 So.2d 855, cert. den. 286 Ala. 741, 237 So.2d 861 (1970).
The insurance company asserts that estoppel is not proven in that no reliance is shown by the evidence. The plaintiff asserts that his reliance lies in the fact that he did not pay his hospital and doctor bills because he believed proper notice within sixty days had been given to the insurance company according to the letter of October 20, 1976.
Estoppel is an equitable principle which is often confused with waiver. However, es-toppel and waiver are distinct and each has its own legal requirements. Mooradian v. Canal Insurance Co., 272 Ala. 373, 130 So.2d 915 (1961) stated the elements of estoppel as: “ ‘(1) A position of authority assumed by defendant [insurer] under the color of right; (2) submission to and reliance upon that assumption, by plaintiff [insured]; and (3) injury suffered by plaintiff as a proximate consequence of such submission and reliance.’ ” (Brackets theirs.) 28 Am.Jur.2d Estoppel and Waiver § 35 (1966) states that the essential elements of equitable estoppel as related to the party to be estopped are:
(1) conduct which amounts to a false representation or concealment of material facts, or, at least, which is calculated to convey the impression that the facts are otherwise than, and inconsistent with, those which the party subsequently attempts to assert; (2) the intention, or at least the expectation, that such conduct shall be acted upon by, or influence, the other party or other persons; and (3) knowledge, actual or constructive, of the real facts. [Footnotes omitted.]
As related to the party claiming estoppel, the essential elements are:
(1) lack of knowledge and of the means of knowledge of the truth as to the facts in question; (2) reliance in good faith, upon the conduct or statements of the party to be estopped; and (3) action or inaction based thereon of such a character as to change the position or status of the party claiming the estoppel, to his injury, detriment, or prejudice. [Footnotes omitted.]
The inaction in this particular case was the nonpayment of the medical bills by the plaintiff. The plaintiff was sent two letters in July and August which informed him that the policy had lapsed and that he had no coverage. He had not paid any bills at that time. After receipt of the October 20, 1976 letter, the plaintiff continued his position of nonpayment. The obligation to pay arose prior to the October 20, 1976 letter. In fact, failure to comply with the contract provision for application within thirty days of the termination of the policy caused the February 10, 1976 policy to become a new policy instead of continuous coverage.
We cannot deduce from the evidence that there was reliance by the plaintiff on the third letter of October 20, 1976. The question becomes whether the plaintiff suffered *1043 any detriment by his nonpayment of medical bills if estoppel is not invoked and the insurance company is allowed to assert the defense of lapse of coverage. We find none. There could have conceivably been detrimental reliance had the insurance company written the letter containing the “sixty day notification” before or during the thirty day period after the marriage, i. e. termination date, and the plaintiff waited until after the thirty day period to apply for a policy. The detriment suffered would be non-coverage under the policy.
Under the present facts if there is no estoppel there is also non-coverage. However, the non-coverage would not result from the nonpayment of the medical bills. Non-coverage results because of the plaintiff’s earlier failure to apply for coverage within thirty days, as provided in the contract.
Because reliance, an essential element of estoppel, is not found in the facts of this case, there can be no estoppel arising in favor of the plaintiff.
The next issue that must be dealt with is that of effective waiver. According to 7 Couch on Insurance 2d Waiver § 35:247 (1961), waiver is the intentional relinquishment of a known right. Once the waiver is made, it is irrevocable unless it was induced by fraud on the part of the insured. In addition, a new consideration or estoppel in the alternative is necessary to establish waiver if the waiver is made after the loss. See: Equitable Life Assurance Society of United States v. Brandt, 240 Ala. 260, 198 So. 595 (1940). This rule does not apply when waiver occurs before the loss.
In this case evidence of the October 20, 1976 letter along with testimony of an agent of the insurance company could not amount to a scintilla of evidence showing waiver, for there is absolutely no evidence indicating there was any new consideration for the waiver given after the loss, i. e. after the surgery. We previously held that no estoppel was shown. Therefore, we find the trial court’s denial of the insurance company’s motion for directed verdict was erroneous as a matter of law, for the necessary elements of estoppel and waiver were not shown.
REVERSED AND REMANDED,
WRIGHT, P. J., and HOLMES, J., concur.