153 So. 870

**SOVEREIGN CAMP, W. O. W., v. HARRIS.**

**7 Div. 196.**

Supreme Court of Alabama.
March 29, 1934.

418

Wm. B. McCollough, of Birmingham, for appellant.

J. A. Johnson, of Fort Payne, for appellee.

Brief did not reach the Reporter.

FOSTER, Justice.

█ This case was tried on counts 1, A, and B. They are substantially the same as form 12 of the Code (section 9531), except B has the additional averment that insured died during the life of the policy. They are therefore not subject to demurrer.

Plaintiff relied upon a benefit certificate for the members of a fraternal society or association in good standing.

Form 12, prior to the Code of 1923, was held not to be sufficient for such a contract, but was changed in some respects as it now appears, and in such condition it has been held to be sufficient. Sov. Camp, W. O. W., v. Gunn, 224 Ala. 444, 140 So. 410; Commercial Casualty Ins. Co. v. Hubert, 226 Ala. 357, 147 So. 134; Am. Bankers Ins. Co. v. Dean, 227 Ala. 387, 150 So. 333.

The special pleas alleged facts which show and they alleged, that deceased, whom we will call insured, had been suspended prior to his death for nonpayment of dues. They respectively alleged that the suspension occurred on November 1, 1931, December 1, 1931, January 1, 1932, February 1, 1932, and March 1, 1932. Insured is alleged to have died March 27, 1932. The general issue and special replications were filed by plaintiff.

We may here pause to say that the proof, without conflict, established those pleas.

The special replications 3 and 4 were withdrawn. Nos. 5 and 6 relied upon a compliance with rule 65 in which they alleged that provision was made for reinstatement of a member suspended for nonpayment of dues. That rule applied only when the effort to reinstate was made within three months after suspension. The substance of the rule 65, here material, is that in that time he must pay the current installment for the month and all arrearages; that he must then be in good health and so remain for thirty days; that such payment shall be held to warrant his present good health, and that he will so remain for thirty days; and the replication then alleged that defendant is estopped to claim that insured stood suspended at the time of his death, because in January, 1932 (which is within three months after his suspension on November 1, 1931), while he was in good health, he paid to defendant association $16.94, to cover all arrearages, and for the current month, "and for his assessments in the future," but that defendant refused to accept same; and that insured remained in good health thirty days. Replication No. 6 alleged that the amount included dues "for such period in the future as such sum would pay," and that payment was made or offered to the clerk of the local lodge. Replication No. 7 also set up an estoppel, but based it on the averment that in September, 1931, when he paid his dues for that month, he offered, tendered, and tried to pay to the local camp clerk dues for one year in advance, but that the clerk refused to accept such payment.

█ Those replications are not subject to the contention appellant makes on this appeal. They do not merely supplement a defective complaint. They allege matter proper to be pleaded specially by way of replication. Those numbered 5 and 6 seek to show that, though insured was suspended for nonpayment of dues, as alleged in the pleas, he was effectually reinstated. They do not expressly confess the pleas, but do not deny them, nor allege matter inconsistent with them. No. 7 may be treated as in the nature of an excuse for not paying the dues for which he was suspended. Special replications need not expressly confess the pleas, if they allege matter consistent with them and do not expressly deny any material feature of the pleas. Fidelity-Phenix Fire Ins. Co. v. Murphy, 226 Ala. 226, 146 So. 387; Bryan v. Day, 225 Ala. 687, 145 So. 150.

To the special replications, defendant made special rejoinder only, not pleading the general issue to them. For special rejoinder No. 1, defendant set out further provisions of the contract, to the effect that, if a member who has been suspended more than three months and less than six months, he must not only in fact be in good health, but must present a certificate of good health from the camp physician, and be balloted for, and must receive a majority vote, and pay four monthly installments of assessments and dues to the clerk of the camp; and he shall also sign a certificate of good health and deliver it to the financial secretary, and pay all arrearages and the current installment, and shall remain in good health for thirty days. And defendant then alleged that the insured was suspended November 1, 1931, for nonpayment of the October installment, and remained suspended for more than three months, and until he died March 27, 1932, and did not present a health certificate from the camp physician, was not balloted on by the members of the local lodge, was not in good health so as to be able to present a

health certificate after November 1st to the date of his death.

Rejoinder 2 alleged that insured did not after suspension try or attempt to reinstate his certificate before his death in March, 1932, that no health certificate was presented, and he was not balloted on.

Rejoinder 3 sets up the provision prohibiting any officer from waiving any of the conditions of the contract, and averring that insured became suspended for nonpayment of the October installment, and remained suspended until his death, and the camp clerk had no authority to bind or estop defendant from setting up the suspension, unless the installments were paid or offered during the time prescribed.

Rejoinder 4 sets up a provision of the contract, which provided in effect that after ten days, and within three months from suspension, in order to reinstate, he must pay to the clerk of his camp all arrearages and dues and deliver to him a written statement of good health, etc., and shall continue in good health for thirty days thereafter. And defendant alleged that insured became suspended November 1, 1931, and did not after ten days and within three months pay all dues and arrearages, and did not tender a written statement that he was in good health. There was no demurrer to rejoinders.

■ For rebutter, plaintiff pleaded (1) that the rejoinders are not an answer to the replications, because they refer to a member who has been suspended for more than three, and less than six, months. Rebutter 2 simply alleged that section 65 of its rules and regulations was adopted after the making of the agreement sued on, and which contained certain provisions there copied, as being set out in the rejoinders.

Demurrer to rebutters 1 and 2 were overruled.

It is quite apparent that rebutter No. 1 presents no issue of fact. It is more in the nature of a demurrer, and undertakes to point out a reason why the rejoinders are not legally sufficient, since the replications alleged an effort to reinstate within three months, and the rejoinders, except No. 4, set up requirements applicable to an effort made after three months.

■ Rejoinders 1, 2, and 3 set up matter inconsistent with replications 5 and 6. The rejoinders were not true, if those replications were true. They were not therefore proper-

ly in confession and avoidance. Fidelity-Phenix Fire Ins. Co. v. Murphy, supra.

Benefit of those facts was available under the general issue which was not pleaded. But, if defendant wished to assume the burden of proving the matter of those rejoinders, rather than merely to require plaintiff to prove replications 5 and 6, that was his privilege.

■ But plaintiff did not take issue on those rejoinders. He pleaded specially by way of rebutter, but not the general issue. That relieved the defendant of proving the matters set up in the rejoinders, and put the burden on plaintiff to prove the rebutters or one of them. But defendant demurred to the rebutters before issue was joined.

■ As we have said, rebutter No. 1 was of no avail as such for any purpose. But No. 2 was substantive, but has application to rejoinder No. 4 only. That rejoinder sets up further provisions affecting reinstatement within three months, which required that, on reinstatement, insured must furnish a certificate of good health. Replications 5 and 6 had set up rule 65, which did not require such certificate, but did not expressly exempt it. The two rules could not operate, unless one amended the other. The effect of rebutter No. 2 should probably be construed as to show that rule 65 amended the provision set up in rejoinder No. 4. If so, rejoinder No. 4 would not show requirements not observed in the effort to reinstate. That rebutter in connection with the replications would show that no certificate of good health was necessary, though good health in fact was required by rule 65. But, since rebutter No. 2 was in no sense an answer to the other rejoinders, except No. 4, the demurrer should have been sustained to it as an answer to them. There was reversible error in overruling the demurrer to that extent. In that state of the pleading, the only issue left, of matter not disputed otherwise, was the substance of rebutter No. 2, and it was proven by the evidence of defendant. It showed that rule 65 became effective November 1, 1931, and was therefore an amendment of the requirements set up in rejoinder No. 4.

■■ The controversy in the pleading at this point was very important in determining whether there was a reinstatement. There was no certificate of health sent when insured attempted a reinstatement. He claimed that such attempt was made in January, 1932, within three months. It could not have been sufficient, if there was an effective require-

ment that a certificate of good health be then sent. There was no dispute but that a check was sent to the home office by a stepson of insured, and son of the beneficiary, and at her request; but that it was not accepted, and was returned, on the claim that it was not sufficient without a health certificate, and that it should be paid to the camp clerk. The dues were payable to the camp clerk, but, if the general officers at the home office instructed insured, as the testimony tended to show, that this amount could be effectually paid at the home office, its tender there was sufficient in that respect. There is also evidence that the check was afterwards tendered to the camp clerk.

■ The home officers and camp clerk contend that this was all done after three months from suspension, when a certificate of the camp physician, as well as one from insured, was required, and not furnished, and for that reason declined. It is also contended that he was then insane, and therefore not in good health. Since the check was not declined because it was a check, and not cash, but for other reasons, and the proof showed that the check was good and would have been paid, it must be treated as in proper form to accomplish the purpose of a tender. 51 A. L. R. 395 et seq.; 23 A. L. R. 1288 et seq.; May v. Findley, 189 Ala. 196, 66 So. 463; Gaunt v. Ala. B. Oil & Gas Co. (C. C. A.) 281 F. 653, 23 A. L. R. 1279; 6 C. J. 669.

■ If plaintiff's version of the facts in that respect was found by the jury to have occurred, the result was to reinstate insured, provided he was then in good health and so remained for thirty days. Sov. Camp, W. O. W., v. Cox, 221 Ala. 58, 127 So. 847.

It was contended that insured was mentally unsound when the check was sent for his reinstatement, and that he was not therefore in good health. Whether that is a want of good health within the meaning of such a policy clause seems not to have been considered heretofore by this court. For the benefit of another trial we will express our views on that subject.

■ We have shown that rule 65 provides that the payment of an amount necessary to reinstate is a warranty that insured is at the time in good health, and that he will remain in good health for thirty days thereafter. But such contract of warranty is to be interpreted in the light of section 8507, Code, by which such warranty shall not prevent the attaching (reinstatement here) of the policy,

unless there was an actual intent to deceive or the matter misrepresented increased the risk of loss. So. States Life Ins. Co. v. Dunckley, 226 Ala. 588, 148 So. 320; Metropolitan Life Ins. Co. v. Chambers, 226 Ala. 152, 146 So. 524; Sov. Camp, W. O. W., v. Rowe, 225 Ala. 336, 143 So. 171.

■ Good health here means that he was "free from disease or ailment that affected the general soundness of healthfulness of his system." He must be "free from serious disease, or * * * derangement of important organic functions," but it does not require that he shall be free from every slight or temporary indisposition. Massachusetts Mut. L. Ins. Co. v. Crenshaw, 195 Ala. 263, 70 So. 768; Sov. Camp, W. O. W., v. Rowe, supra. "It must appear that the sickness was one having a tendency to shorten life or permanently impair health or that it amounted to a vice in the constitution." Richards' Law of Ins. (4th Ed.) p. 598.

■ The insanity which will increase the risk of loss is, we think, a disease, or congenital defective formation, of the brain, of a serious nature, or which may lead to serious consequences.

With respect to a situation similar to that we are dealing with, the Appellate Division of the Supreme Court of New York in McNeil v. Southern T. M. Relief Ass'n, 40 App. Div. 581, 58 N. Y. S. 119, 122, treats it as follows: "The deceased, after he had failed to pay the assessment of January 10, 1896, being insane, it was not possible to produce satisfactory evidence of good health. Insanity is a mental disease, and also implies disease or congenital defect in the brain. 1 Rawle's Bouv. Dict. 1051. Within the meaning of the insurance contract, one insane cannot be deemed in good health. * * * The insanity of the deceased did not excuse his nonpayment of the assessment, and satisfactory proof that he was in good health was not, and could not be, produced."

■ There are some diseases which are commonly known to be of such serious consequences that the court will declare that they increase the risk of loss, without making a jury question, but it is generally one for the jury. Metropolitan Life Ins. Co. v. Chambers, supra; Padgett v. Sov. Camp, W. O. W., 218 Ala. 255, 118 So. 456; Sov. Camp, W. O. W., v. Rowe, supra; National Life & Accident Ins. Co. v. Baker, 226 Ala. 501, 147 So. 427.

■ Mental disorders are of such varied form, and we know so little about them, and

their true nature and course, and the prospects for a partial or complete restoration are so varied, we will not say that such disorders will or will not certainly in all instances increase the risk of loss. We feel sure cases may arise such as that dealt with by the New York court, which are so pronounced, and where there is no conflict in the evidence, that the court will so declare. But we think it best to leave each case to be controlled by its peculiar facts and the evidence submitted, as to whether there is or not a jury question.

On another trial of this case, the evidence will doubtless be more extended in that respect than that now shown.

■ Letters which passed between the camp clerk and the general officers at the home office are self-serving declarations and are not admissible over the objection of plaintiff. The court correctly so ruled. Ins. Co. of N. Am. v. Guardiola, 129 U. S. 642, 9 S. Ct. 425, 32 L. Ed. 802; 22 C. J. 904.

For the error pointed out, the judgment is reversed, and the cause remanded.

Reversed and remanded.

ANDERSON, C. J., and GARDNER and BOULDIN, JJ., concur.