63 So.2d 707

**WOODMEN OF THE WORLD LIFE INS. SOC., Inc. v. PHILLIPS.**

6 Div. 417.

Supreme Court of Alabama.

Feb. 26, 1953.

Rehearing Denied March 26, 1953.

Wm. B. McCollough, Birmingham, for appellant.

J. Robt. Huie and J. Terry Huffstutler, Birmingham, for appellee.

MERRILL, Justice.

This is an action on a fraternal insurance policy to recover a death benefit.

The complaint as amended consists of one count. Defendant entered two pleas of the general issue and five special pleas to the complaint. Upon the pleas the plaintiff joined issue.

The defense rests upon the theory that the insured was not in sound health at the time of the delivery of the policy, contrary to the warranties made at that time that he was in good health; and that insured had within ten years before making application for the policy consulted a physician and received treatment for a serious disease or illness, contrary to the statement of the insured in his application for the policy sued on, and the said disease or illness materially increased the risk of loss, or that the misrepresentations by the insured were made with actual intent to deceive. Code 1940, Title 28, section 234.

The insured, Reese Phillips, signed the application for insurance at his home on February 3, 1950, and present at that time, other than the insured, were his wife (appellee), a neighbor and Herman Black, the agent for the society. The application was sent to the home office of the society by Black, and he testified that the society returned it requesting a medical examination. Black took the papers to Mr. Phillips who stated that he did not have time to go to town for a medical examination that day but would go later. A few days later Mr. Black, with the district superintendent of the society, called on Mr. Phillips who then stated that he had not gone to see the doctor and if it was going to cause him that much trouble he did not want the insurance and asked that his first premium be refunded to him. He was told that the premium had been sent to the home office with the application. Later Mr. Black and the district superintendent made a trip to Montgomery, Alabama, and talked to the state manager for the society concerning the application. On March 6, 1950, the policy was issued without a medical examination. Some time later Mr. Phillips became ill and, on May 9, 1950, he was admitted to the Jefferson-Hillman Hospital in Birmingham, Alabama, where he died on May 11, 1950.

The doctor, who testified for the defendant, examined Mr. Phillips when he was brought to the hospital and signed the death certificate two days later. He testified that in his judgment the insured had had high blood pressure for six months prior to the date of his examination on May 9th. He had never seen Mr. Phillips previous to his entry in the hospital on that date. Two neighbors of the insured testified that they had known the insured for about fifteen years, and did not know of any illness or sickness he had had preceding his last, and that he had worked practically every day on his farm. This testimony was supported by that of the wife of insured. The defendant relied upon the testimony of the physician who examined Mr. Phillips when he was brought to the hospital, the hospital record and depositions of the secretary and medical examiner of the defendant society.

The jury found in favor of the plaintiff. Defendant filed a motion for a new trial which was overruled.

■■ Appellant has forty-seven assignments of error. Assignments 2, 11, 12 and 13 complain that the statement contained in the proof of loss and the death certificate, showing the cause of death to have been malignant hypertension, was conclusive against plaintiff, since proof of loss signed by the plaintiff, the physician and by the

566

secretary of the local lodge stated that the cause of death was malignant hypertension, and appellant cites the following from Liberty National Life Ins. Co. v. Tellis, 226 Ala. 283, 146 So. 616, 617: "So considered, therefore, the death certificate disclosed the insured died from a disease of the heart, and, there being no competent evidence by way of contradiction or avoidance, its recitals become conclusive against the beneficiary". This has long been the law.

However, the physician who signed the death certificate stated that he did not know at that time an autopsy would be performed; that his death certificate would not have been the same had he had the autopsy report before him because, according to the autopsy findings, the high blood pressure was a symptom and there was a kidney disease which was primarily responsible for the high blood pressure. We can think of no more competent evidence to contradict or avoid the statement in the death certificate than that of the same physician who signed the death certificate, who later had access to the autopsy report and additional facts on which to base his testimony.

Assignments 3, 4, 5, 9, 12, 18 and 35 complain of the failure of the trial court to give certain charges. In every instance these charges were covered by the oral charge to the jury or were properly refused. One charge complained of was actually given by the court. We find no error as to these assignments.

Assignments 19, 20, 21, 22 and 39 complain that the trial court sustained objections to answers to certain numbered interrogatories propounded by the defendant to the secretary and to the medical examiner of the defendant society. These assignments fail for two reasons: (1) assignment 22 complains that the court sustained the objection of plaintiff's counsel's objection to answers to interrogatory 16. Actually the court overruled the objection and plaintiff excepted. (2) The plaintiff withdrew all objections to the depositions and the exhibits thereto, and they were, quoting the trial court, "admitted in evidence in their entirety".

Assignments 23 through 34, inclusive, pertain to the verdict. The verdict rendered by the jury was as follows: "We, the jury, find for the plaintiff and assess her damages Five Thousand Dollars ($5,000.00) plus 6% annually".

The court, notwithstanding the motion made by defendant's counsel for a judgment *non obstante veredicto*, rendered a judgment as follows:

"It is ordered and adjudged by the court that the plaintiff have and recover of the defendant the sum of Five Thousand & 00/100 Dollars plus 6% interest annually, which said interest amounts to Four Hundred Eighteen & 17/100 ($418.17) Dollars, the total sum of said judgment, including interest, being in the amount of Five Thousand, Four Hundred Eighteen & 17/100 ($5,418.17) Dollars, as ascertained and assessed by the jury upon the proof adduced upon the trial of this cause, besides all costs herein accrued, for which execution may issue."

We do not find where this particular question has been decided by the appellate courts of this State. A thorough discussion of the principles concerning verdicts is contained in the case of W. T. Rawleigh Co. v. Hannon, 32 Ala.App. 147, 22 So.2d 603. The case of Wilson v. Federal Land Bank of New Orleans, 230 Ala. 75, 159 So. 493, 496, quotes from City of Birmingham v. Hawkins, 196 Ala. 127, 72 So. 25, where it was said:

"General verdicts are always sufficient, if they respond in substance to every material fact involved in the issue. And doing this, the court commits no error by putting the verdict in form. The verdict may be * * * written or oral, and it is always sufficient, if it responds substantially to the questions of the right issue or issues raised. All else is form, which the court can supply with or without the consent of the jury."

In the instant case immediately after the trial court had read the written charges requested by the defendant, he stated the following to the jury:

"Gentlemen, one other thing I want to mention to you in reference to interest on the amount of the policy. That is, in the event you find for the plaintiff, and simply to give you this information, that is, that the interest in that event would be figured from May 16, 1950, instead of from the date of the death. That is the date of the proof as I understand it, and it is understood that would be the date, simply in the event you should find for the plaintiff."

In 72 A.L.R. 1150, under "Interest awarded without computation," we find the following:

"When a jury has awarded interest in its verdict, but has failed to compute it, the court may make the calculation, and add the interest to the verdict, if the amount can be determined by a mere mathematical calculation."

And 72 A.L.R. on page 1151, same annotation, we find the following:

"In Solomon v. Westbury [Waterbury] Brass Goods Corp., 2 Cir., 1925, 6 F.2d 990, it was said: 'In this case the jury has left nothing to uncertainty. It gave its verdict for the amount specified therein, "with whatever interest the plaintiff is lawfully entitled to." The amount upon which the interest was to be computed was fixed and certain. The act which constituted the breach and the date on which it occurred are not in dispute, and all that remained was a mere matter of mathematical calculation. As the jury had awarded interest, the plaintiff was lawfully entitled to interest from the time of default, and it is undisputed that default occurred on December 22, 1920, when notice was given by defendant that it could not use the goods. Nothing was left to uncertainty. And there is no suggestion that any mistake was made in the computation of the interest. Under the circumstances it is not open to question that, there being no uncertainty as to the amount involved, the court had power to amend the verdict, the amendment having been made during the term at which the verdict was rendered.'"

In Corcoran v. Halloran, 20 S.D. 384, 107 N.W. 210, 212, it was said:

"'We, the jury, duly impaneled in the above-entitled action, do find for the plaintiff on all the issues therein, and assess his damages at $545, with interest at 7 per cent. per annum.' It is contended by the appellant that 'with interest at 7 per cent. per annum' renders the verdict uncertain as to amount, for the reason that it does not specify the amount of the interest nor the time from which the interest was to commence to run. The verdict, though somewhat informal, is, nevertheless, sufficient in our opinion to authorize judgment, as the interest was a matter of computation simply; the time being fixed by the time the defendant concluded his work upon the mine, namely, October 21, 1900. * * * it was competent for the court to direct the clerk to compute interest at 7 per cent. to the date of the verdict, and add that to the amount specified in the verdict, and render judgment therefor. 29 Am. & Eng. Ency. Law, p. 1018; Alamo Fire Ins. Co. v. Lancaster, 7 Tex.Civ.App. 677, 28 S.W. 126."

In our opinion, the trial court either performed, or had performed, a mathematical calculation of the interest in accordance with the verdict of the jury.

Assignments 37, 38, 40, 41, 42, 43, 44, 45, 46 and 47 complain of certain testimony given by Mr. Black, the agent who sold the policy, and who testified for the plaintiff. We have examined this testimony, and while some of his answers were not responsive to the question, they were objected to and the objection sustained. We

find no reversible error in the court's ruling on this testimony.

 Assignments 6, 7, 8, 9, 10, 13, 14, 15, 16 and 17 complain of a failure of the court to give the general charge as to the special pleas. Plaintiff made out a prima facie case by introducing in evidence the certificate of insurance and showing that proof of loss had been duly made before the bringing of the suit. Under the pleas the burden of proof was on the defendant to show that representations made by Phillips were false and were made with intent to deceive or that said representations or warranties were false and that they were in respect to matters which increased the risk of loss. Sovereign Camp, W. O. W. v. Brock, 226 Ala. 579, 148 So. 129; Sovereign Camp, W. O. W. v. Hutchinson, 214 Ala. 540, 108 So. 520.

We have carefully examined all the evidence in detail, and find that the questions of fact were properly submitted to the jury for their determination. Woodmen of the World Life Ins. Society v. Bolin, 243 Ala. 426, 10 So.2d 296; Sovereign Camp, W. O. W. v. Davis, 242 Ala. 235, 5 So.2d 480; New York Life Ins. Co. v. Hoffman, 238 Ala. 648, 193 So. 104; Sovereign Camp, W. O. W. v. Deese, 236 Ala. 85, 181 So. 274; Sovereign Camp, W. O. W. v. Jackson, 233 Ala. 120, 170 So. 192; Sovereign Camp, W. O. W. v. Moore, 232 Ala. 463, 168 So. 577; Sovereign Camp, W. O. W. v. Rowe, 225 Ala. 336, 143 So. 171; Padgett v. Sovereign Camp, W. O. W., 218 Ala. 255, 118 So. 456; Reliance Life Ins. Co. v. Snead, 217 Ala. 669, 117 So. 307, 310; Sovereign Camp, W. O. W. v. Gibbs, 217 Ala. 108, 114 So. 915. These authorities also answer assignment No. 1, which is based upon the failure of the trial court to grant the motion for a new trial.

Throughout appellant's brief the insistence is made, repeatedly, that the plaintiff should not have recovered because the insured was dead within sixty days after the delivery of the policy. In the case of Southern Life & Health Ins. Co. v. Morgan, 216 Ala. 529, 113 So. 540, the undisputed evidence showed that the policy was delivered on January 26, 1925, and the insured died of tuberculosis on February 27, 1925, and this Court reached the conclusion in that case that a jury question was presented.

There being no error in the record, the judgment of the lower court should be and is affirmed.

Affirmed.

LIVINGSTON, C. J., and LAWSON. and STAKELY, JJ., concur.