93 So.2d 797

**BROTHERHOOD OF RAILROAD TRAIN-MEN INSURANCE DEPARTMENT, Inc.**

**v.**

**Elsie N. PEMBERTON.**

**6 Div. 147.**

Court of Appeals of Alabama.

Nov. 27, 1956.

Rehearing Denied Jan. 15, 1957.

Taylor, Higgins, Windham & Perdue, Birmingham, for appellee.

Jackson, Rives, Pettus & Peterson, Birmingham, for appellant.

PRICE, Judge.

Defendant, a fraternal insurance company, appeals from a judgment obtained upon its benefit certificate or insurance policy issued on the life of Roland G. Pemberton, payable to plaintiff, his wife, upon his death, the insured having died on December 25, 1953.

The pleas 19, 20 and 21, to which demurrer was sustained, allege that the policy is to be construed by the laws of Ohio as provided in the application for insurance and aver, "that under the law of the State of Ohio the following rule of law applied with respect to applications for insurance made to fraternal benefit societies: 'When a party in order to effect insurance upon his life, states that the answers and declarations made by him in his application to participate in a benefit fund of a fraternal society and in his medical examination are true, and agrees that they are to be treated as warranties and made a part and parcel of the contract and that if untrue the policy shall be void, then the society is not liable if any of the statements are untrue and the agreement of the parties removes the question of the materiality from further consideration.' And defendant further avers that defendant is a fraternal benefit society duly incorporated and existing under the laws of the State of Ohio as a non-profit institution and that the deceased insured made untrue answers in his said application to defendant as aforesaid and that said policy is thereby avoided by reason of said untrue statements."

The statements in the application alleged to be untrue are set out in the pleas.

■ The rule for pleading the law of another State is set out in Dawson v. Dawson, 224 Ala. 13, 138 So. 414, 416, in this language:

"Generally when a statute is relied upon it should be set out in haec verba, and when a judicial opinion of the sister state is invoked it should be so fully set out in the plea as to inform this court of the point or question decided, but this does not mean that the whole opinion including a transcript of the record should be set out. It is enough if the opinion is sufficiently set out to apprise us of the point involved and how it was decided by the highest court of the sister state." See also Equitable Life Assur. Soc. v. Brandt, 240 Ala. 260, 198 So. 595, 134 A.L.R. 555, for a review of decisions of our courts relating to the rule.

It will be observed that the pleas here fail to indicate whether or not the law of Ohio relied upon was statutory, and if so, where such statute was found, or whether it was established by judicial precedent of "the highest court of the sister state." Dawson v. Dawson, supra.

■ We are further of the opinion that the averment that "under the law of the State of Ohio the following rule applied with respect to applications for insurance made to fraternal benefit societies," was a conclusion of the pleader and was insufficient as an allegation that the law of Ohio relied on was in force and in effect at the time of the contract in question. Equitable Life Assur. Soc. v. Brandt, supra.

We conclude the laws of Ohio were not sufficiently set out in the pleas and the demurrer thereto was properly sustained.

There being no merit in the assignments of error as to these pleas, the remaining assignments argued collectively in brief will not be considered. Emergency Aid Life Ass'n v. Gamble, 34 Ala.App. 377, 40 So.2d 887, certiorari denied 252 Ala. 282, 40 So.2d 888; Sovereign Camp, W. O. W. v. Davis, 242 Ala. 235, 5 So.2d 480; Lancaster v. Johnson, 34 Ala.App. 637, 42 So.2d 604.

■ This aside, the law of a sister state is a fact which must be pleaded as well as proved, Cubbedge, Hazelhurst &

650

Company v. Napier, 62 Ala. 518, and the pleas having been eliminated by the sustaining of the demurrer, evidence as to the law of Ohio was inadmissible, and of course without such evidence, the requested special charges were abstract.

■ Assignments of error numbers 8 and 9 question the correctness of the trial court's ruling sustaining demurrer to pleas 5 and 9, as amended, respectively. These pleas were each amended in two respects. The substance of the defense asserted in the pleas is the insured made false answers to question 9 in the application for the policy sued on, as follows:

"This is important answer fully

"9. Have you received medical or surgical advice or treatment within the past five years? *Yes*.

"If so, give details *Bad cold* in 1-1-53 for *cold* lasting *10 days*.

"Doctor's name and address Elbert H. Sanders, 1113 East Lake," when in truth and in fact he had been treated by Dr. Sanders in February, 1952, and subsequent thereto for a disease of the heart.

Conceding, but not deciding that the ruling on these pleas was error, it was nevertheless harmless error. Evidence on this issue was freely admitted, and defendant had the full benefit of the alleged defense set up in said pleas. Sovereign Camp W. O. W. v. Deese, 236 Ala. 85, 181 So. 274; Milwaukee Mechanics Ins. Co. v. Maples, 37 Ala.App. 74, 66 So.2d 159, certiorari denied 259 Ala. 189; 66 So.2d 173.

The case was submitted to the jury on count 3, which is in Code form, Code 1940, Title 7, § 223, Form 12, and pleas 1(a), 2(a), 4, 6, 7, 8, 10, 11, 22 and 23.

■ ■ The plaintiff made out a prima facie case for recovery on the policy. Booker T. Washington Ins. Co. v. Crocker, 36 Ala. App. 273, 56 So.2d 353, certiorari denied 256 Ala. 574, 56 So.2d 355; United Benefit Life Ins. Co. v. Dopson, 26 Ala.App. 452, 162 So. 545, certiorari denied 230 Ala. 660, 162 So. 546.

■ The burden then rested upon defendant to reasonably satisfy the jury as to the truth of the averments of one or more of its special pleas. Woodmen of World Life Ins. Soc. v. Phillips, 258 Ala. 562, 63 So.2d 707; Sovereign Camp W. O. W. v. Sirten, 234 Ala. 421, 175 So. 539.

■ The defense is based upon the theory that the insured falsely represented in the application for the policy sued on that he was in good health and that he had never been afflicted with any disease of the heart, when in fact he had in February, 1952, and subsequent thereto, been treated for a disease of the heart, which disease materially increased the risk of loss, or that such representations were made with actual intent to deceive. Title 28, § 234, Code 1940.

The plaintiff testified that insured worked regularly 40 hours per week as a foreman and switchman for the L. & N. Railroad Company; that he appeared to enjoy good health; that he worked around the house; hauled water for the hogs in a wheelbarrow; worked in the garden and never complained to her that he had heart trouble.

Plaintiff's witness, William Ross, testified that he had known insured for about 35 years; that at different times they had worked on the same crew for the railroad company and many times had worked together for as long as two years; that when Mr. Pemberton came to his house on the day of his death he did not appear to be sick or ill; that he had never known insured to be sick or look ill the whole time he had known him; that he worked regularly and did a full day's work; that he had never heard Mr. Pemberton complain of having heart trouble and had never seen him have falling out spells or strokes when working around him.

The witness further testified that on Christmas day of 1953 insured came to his home, and a few minutes after his arrival he slumped over in his chair and died within about ten minutes.

Dr. Sanders, called as a witness for defendant, testified that his records showed he first examined insured on February 16, 1952, when he complained of coughing and shortness of breath. After a series of examinations an electrocardiogram was made on February 25, 1952, and a diagnosis of coronary heart disease was arrived at, which was an insufficiency of blood flood through his coronary artery, and which disease in his opinion disposed him to death by coronary occlusion. The doctor testified: "On the 10th of March, 1952, he was given digitalis for congestive heart failure. My note does not state it was given for heart failure, but I don't use digitalis except for congestive heart failure." The witness stated that he treated insured several times in March, April, May and three times in September, all in 1952, and several times in January of 1953, and had no record of seeing him after January. On cross-examination he said: "My records do not show whether he came in and do not show what he came in for in those—in January. I only have one note about the information I made. I made X-rays of his chest on the 17th of January, 1953." To the question, "He had a cold or influenza or something of that type, didn't he?" the witness answered: "I don't know and my records wouldn't bear me out." The witness further testified that on February 25, 1952, nearly two years before insured died, he entered on his records, "heart negative," and explained: "Then I listened to his heart with the stethoscope, and I did not detect any abnormality in his heart in oscillating the heart, but that does not mean his heart examination in its entirety was negative, because on the same day he had rales in both bases of his chest, which are most suggestive of congestive heart failure. He had liver enlargement, which is more suggestive, and on that same date, his electrocardiogram showed a very definite evidence, which I think—I am not as greatly advised in electrocardiograms as some doctors are, but I will say these changes are awfully hard to eke out." The witness also stated that in his opinion Mr. Pemberton died sooner than he would have if he had not had the heart condition.

Defendant insists it was due the general affirmative charge because of the statement by the beneficiary as a part of the proof of loss furnished to defendant that the cause of death was "coronary occlusion," and the following statement in the physician's death certificate:

"7. Date of first illness: 2–16–52. 8. Nature (Give full particulars) Coronary Heart Disease. 9. Immediate cause of death Coronary occlusion."

Appellant cites the following from Cotton States Life Insurance Company v. Crozier, 216 Ala. 537, 113 So. 615, 617:

"The physician's death certificate, filed with defendant as part of the proofs of death, was not evidence for plaintiff, against defendant, of the truth of any of its statements of fact, but only of plaintiff's compliance with the requirements of the policy in that behalf. 37 Corp.Jur. 560, § 316; Id. 632, 633, §§ 434, 435. *The statements in the certificate, however, including the statement that the assured died of heart disease, which had existed for 'two or three years,' and for which the physician had treated her during that time, were evidence against plaintiff by way of admissions.* 37 Corp. Jur. 632, § 435. And such statements, if unrebutted or unexplained, or unqualified, by other evidence tending to show that they are erroneous or untrue, are held as binding and conclusive on the beneficiary. 37 Corp. Jur. 561, § 316." (Emphasis supplied.)

Dr. Sanders, the physician who signed the death certificate, testified on the trial that the last time he saw insured was January 17, 1953, which was nearly a year before his death and did not see him after he died. The death certificate recites that no autopsy was performed. The witness stated he did not know what insured died of; that he did not know whether he had been in one or more accidents; that he did not know what changes might have occurred in his physical condition; that he did not know what he had been eating or

whether he had indigestion on the day he died or whether he was well or sick from some other cause; or whether or not he was poisoned. The witness said he signed the death certificate in which he stated he died of coronary occlusion, but he was going by some one else's record and had no knowledge of his own about his condition that day. To the question: "Now, you put on this death certificate that he died of coronary occlusion. You say you don't know that to be true, you just put that down as being your opinion even though you hadn't seen him?" the witness replied: "That's right."

We are of the opinion that under this witness' testimony statements in the death certificate should not be held as binding and conclusive evidence as to the cause of death. In the language of Justice Merrill in Woodmen of World Life Ins. Soc. v. Phillips, 258 Ala. 562, 63 So.2d 707, 709: "We can think of no more competent evidence to contradict or avoid the statement in the death certificate than that of the same physician who signed the death certificate."

"There are some diseases which are commonly known to be of such serious consequences that the court will declare that they increase the risk of loss, without making a jury question, but it is generally one for the jury." Sovereign Camp W. O. W. v. Harris, 228 Ala. 417, 153 So. 870, 874; Sovereign Camp W. O. W. v. Sirten, 234 Ala. 421, 175 So. 539. But we have found no authority holding that the courts will take judicial knowledge that a disease of the heart is one of such maladies.

In Empire Life Ins. Co. v. Gee, 171 Ala. 435, 55 So. 166, 169, the court said:

"Possibly any disease of so vital an organ affects the prospect for life; but the materiality of a statement of fact as affecting the risk of loss is ordinarily a question for the jury, and we are scarcely able to affirm, as a matter of judicial knowledge, that every disease of the aorta increases the risk of loss." See also Heralds of Liberty v. Collins, 216 Ala. 1, 110 So. 283.

We think that the foregoing recital of the salient features of the evidence shows, without discussion, that a jury question was presented upon all the issues of fact indicated and that defendant was not due the general affirmative charge.

After a careful examination of the evidence we cannot affirm that the verdict was contrary to the great weight of the evidence and that the trial court erred in denying the motion for a new trial.

The judgment of the trial court is affirmed.

Affirmed.