104 So.2d 483

## NATIONAL SECURITY INSURANCE COMPANY OF ELBA, Alabama,

v.

### Ida Mae TELLIS.

### 6 Div. 441.

Court of Appeals of Alabama.

April 22, 1958.

Rehearing Denied May 27, 1958.

Parsons, Wheeler & Rose, and Malcolm
L. Wheeler, Birmingham, for appellant.

Victor Gold and Jas. C. Baldone, Birmingham, for appellee.

PRICE, Judge.

The appellee recovered a verdict of $448 in the Circuit Court of Jefferson County against the appellant, The National Security Insurance Company of Elba, Alabama.

The complaint claims for the alleged breach of an indemnity provision in a life, accident and health policy insuring plaintiff against loss incurred by hospital expenses arising from the illness of her daughter, Rosa M. Harris.

The defendant filed plea in short by consent the general issue, with leave to give in evidence any matter which if well pleaded would be admissible in defense of the action.

The pertinent policy provisions are: (1) "The company assumes no liability under this policy until the policy is issued by the company and delivered to the insured during the lifetime of the insured and while the insured is in sound health, * * *" (2) "If by reason of injury or sickness, originating after this policy is issued, the insured shall be necessarily confined within a legally constituted hospital" for a specified period the company will pay certain amounts.

The following stipulation was filed on the trial:

"The parties hereto agree to the following stipulations of fact;

"1. That the policy was issued on May 31, 1954, and was in full force and effect on June 15, 1954, when the insured, Rosa Mae Harris, was hospitalized, and tender of premium is deemed to have been made.

"2. That if the plaintiff is entitled to recover, the correct amount provided for in the said policy would be $8.00 a day for fifty days, and $48.00 miscellaneous medicine, or a total of $448.00.

"3. That the hospital and medical records of the said Rosa Mae Harris at the University Hospital be admitted in evidence.

"4. That the proof of loss forms submitted by the plaintiff to the defendant, as well as the policy and application card, are admitted without further proof.

"5. That the issues to be decided in this case are:

"(a) Was the insured, Rosa Mae Harris, in sound health on May 31, 1954, when the policy of insurance was issued, and

"(b) Did the sickness for which she was hospitalized originate on or before May 31, 1954, the date of the issuance of the policy?

"6. If the insured, Rosa Mae Harris, was in sound health on May 31, 1954, when the policy was issued, and if the sickness for which she was hospitalized originated after May 31, 1954, the date the policy was issued, the verdict should be for the plaintiff.

"7. If the insured, Rosa Mae Harris, was not in sound health on May 31, 1954, when the policy was issued, or if the sickness for which she was hospitalized originated on or before May 31, 1954, your verdict should be for the defendant.

"Victor Gold
"Attorneys for Plaintiff

"Parsons, Wheeler & Rose
"Attorneys for Defendant

"Filed in open court April 24th, 1956."

Appellant contends that the insured was not in "sound health" on May 31, 1954, the date of issuance of the policy, and that the illness for which she was hospitalized originated prior to that date.

■ The burden of proof was upon the defendant to prove these facts. Mutual Sav. Life Ins. Co. v. Alsup, 224 Ala. 111, 138 So. 824; National Life & Accident Insurance Co. v. Norris, 27 Ala.App. 153, 167 So. 350; North Carolina Mut. Life Ins. Co. v. Coleman, 248 Ala. 32, 26 So. 2d 120.

The insured entered the University Hospital on June 15, 1954. As a witness for the defendant Dr. Bob Hogan stated that he was testifying from the hospital records, which showed that on admission insured gave a history of anorexia, a condition causing loss of appetite, for three or four months prior to entering the hospital, with a resulting weight loss of thirty pounds. One month prior to admission she developed a rash over sun-exposed surfaces of her body, which itched. The rash was still present on admission, but had stopped itching. About three days after the rash first appeared, she developed general weakness and easy fatigue, which became progressively worse over a seven-day period and remained stationary for the next three weeks before admission. At the time she entered the hospital she had to rest after walking half a block and could not elevate her arms over 90 degrees. Two months prior to admission she developed periorbital edema, which was a swelling around the eyes and which persisted. She had had occasional chilliness for a month and since her illness had difficulty in swallowing.

The doctor testified that the history and physical examination were insufficient to provide a specific diagnosis of the cause of insured's condition, therefore, a differential diagnosis was listed. This means that possibly other evidence would have to be gathered. The diagnosis the doctors had in mind at the time were, "Periarthritis, myasthenia gravis. This is a syndrome." Periarthritis is a generalized disease involving the arteries. Myasthenia gravis denotes muscle sickness and disorders of the adrenal glands. A note was added to her chart on January 14, 1955, which read, "believe patient had dermatomositis," which is a disease involving primarily the skin, subcutaneous tissues and superficial aspects of the muscles.

The doctor testified he did not know what first starts such illness, it is a very rare disease, but about 40 per cent of the patients who have it are females and have a vaginal carcinoma or cancer that doesn't show itself for some months. However, he did not suspect that made up the disability after looking at her; that what he said was that about ten per cent of the females who have that are found later to have a cancer.

Dr. Hogan further testified that according to the history given him by insured the sickness originated three or four months prior to her entering the hospital. But this was a qualified opinion, based entirely on the history, and was not based upon his diagnosis of her condition. The doctor also stated that he had never seen or treated

a case similar to insured's. In response to a question relating to the time such illness originates, he said: "We don't know when it begins."

Ida Mae Tellis, the plaintiff, testified that Rosa Mae Harris was her daughter and lived with her. She took her to the hospital on June 15, 1954, and a little before she entered her in the hospital she looked a little white, but she did not know how much weight she had lost. The reason she put her in the hospital was that she had a little rash on her arm, but she didn't notice that her eyes were swollen until after she was in the hospital. After she was in the hospital she said she was weak and had chills and fever, but she didn't have all those symptoms three or four months before she went to the hospital. Plaintiff filed statement of the attending physician with the company to get benefits under the policy. The statement was introduced in evidence as defendant's exhibit 1.

Plaintiff further testified insured stayed in the hospital two months and two weeks, and that she died at home on July 31, 1955.

Mrs. Elizabeth Sisson testified insured worked for her as a maid from about January, 1954, until the last day of May, or first day or two in June. She noticed no variation in her weight during that period. Insured was seventeen years old and was a very active girl. She cleaned the blinds, waxed floors and often ran from the house to the clothes line and back. She introduced a picture of insured that was taken on April 5, 1954. Insured at first worked one or two days a week, but she worked five or six days a week the entire month of May. She never saw her after that, but a few days after she left she called from the hospital to say she was sick. Insured made no complaint as to any illness, and she noticed no symptoms of any illness.

■ The "Sound Health" provision in insurance contracts is a "warranty" within the meaning of Section 6, Title 28, Code 1940. To avoid the policy the unsound health must be such as to increase the risk

of loss. Life Ins. Co. of Virginia v. Newell, 223 Ala. 401, 137 So. 16; North Carolina Mut. Life Ins. Co. v. Coleman, supra.

■ "There are some diseases which are commonly known to be of such serious consequences that the court will declare that they increase the risk of loss, without making a jury question, but it is generally one for the jury." Sovereign Camp, W. O. W. v. Harris, 228 Ala. 417, 153 So. 870, 874; Sovereign Camp, W. O. W. v. Sirten, 234 Ala. 421, 175 So. 539; New York Life Ins. Co. v. Zivitz, 243 Ala. 379, 10 So.2d 276, 143 A.L.R. 321.

In 45 C.J.S. Insurance § 893, p. 971, it is stated that clauses like the one we have designated as No. 2 above, are strictly construed against the insurance company and that illness or disability will be deemed to have its inception when the disease first becomes manifest or active. And in Mutual Benefit Health & Accident Ass'n v. Ramage, 293 Ky. 586, 169 S.W.2d 624, it is said that the disease originates when it becomes active or there exists a distinct symptom or condition from which one learned in medicine can with reasonable accuracy diagnose the disease.

In National Casualty Co. v. Hudson, 32 Ala.App. 69, 21 So.2d 568, we held that the insurer was liable if the sickness did not manifest itself to the extent of hindering or preventing the afflicted organs from normally discharging their normal functions until after the effective date of the policy, although the medical cause of the illness may have antedated the issuance of the policy. See also Jefferson Life & Casualty Co. v. Bevill, 264 Ala. 206, 86 So.2d 292.

In Grabove v. Mutual Ben. Health & Accident Ass'n, 241 Ala. 88, 1 So.2d 297, 299, the court said: * * * "We have held the definite testimony of members of the medical profession, expert in their line, based upon facts within the knowledge and discernment of men of learning and experience, when not in conflict, nor opposed

by other evidence, does call for the affirmative charge, with hypothesis."

Appellant insists that the uncontradicted and undisputed medical evidence shows that the insured was not in sound health on May 31, 1954, the date of the issuance of the policy and that she was not in sound health three or four months prior thereto, and that the court erred in refusing to it the requested general affirmative charge.

■ We cannot, say that the expert testimony of Dr. Hogan establishes conclusively that insured's condition existed when the policy was issued nor that it had its origin before that date. The physician's testimony is not of the positive character which we think is contemplated under the rule announced in the Grabove case, supra. On the question of the inception of insured's illness the physician stated he was testifying altogether from the "history" and not from any facts within his knowledge, and he declined to express an opinion as to the time her sickness originated.

Moreover, the testimony of insured's apparent good health and the discharge of her duties presented questions for the jury. Commonwealth Life Ins. Co. v. Harmon, 228 Ala. 377, 153 So. 755.

Appellant further insists that, although the evidence does not show that insured's illness was of the type of which courts take judicial notice of risk of loss, it does show that it ultimately resulted in death, thus establishing conclusively that the sickness increased the risk of loss, citing as authority for such contention Life Ins. Co. of Virginia v. Newell, 223 Ala. 401, 137 So. 16.

We do not agree. There is no direct evidence here that the sickness continued unto death, as there was in the Newell case. There, insured became ill on June 14th; two days later was carried to the hospital; and died on June 24th, one day after the effective date of the policy.

In this case the evidence shows insured entered the hospital on June 15, 1954, and remained in the hospital some six weeks. Plaintiff testified she died at home a year later, on July 31, 1955. No autopsy was performed. No evidence was presented as to the cause of death. Dr. Hogan testified he never saw her after she left the hospital, and had not learned that she had died.

Furthermore, even if it be conceded, which we do not, that the proof shows she died of the disease for which she received treatment at the hospital, thus establishing that the sickness increased the risk of loss, yet, it does not necessarily follow that under the evidence here such proof is conclusive on the question as to the time the illness originated.

■ Appellant further contends that it was due the general affirmative charge under the established rule that physician's statements in the proof of loss are deemed prima facie true, and unless contradicted or avoided by competent evidence, they are conclusive. Such is the general rule. Liberty Nat. Life Ins. Co. v. Tellis, 226 Ala. 283, 146 So. 616; Liberty Nat. Life Ins. Co. v. Trammell, 33 Ala.App. 275, 33 So. 2d 479, certiorari denied 250 Ala. 159, 33 So.2d 483; Grabove v. Mutual Ben. Health & Accident Ass'n, supra.

The "statement of attending physician" contains the following: "3(a) If sickness, when did symptoms first appear?" Answer: "4 Mo (30#) weight loss. Swelling of eyes 2 Mo. Imp. Periarthritis or Chronic Renal Infection."

■ Dr. Hogan testified the statement was not prepared by him, and although his name was affixed to it the signature was not his; that he had never seen it, and he assumed the information therein was taken from the hospital records by a hospital employee.

Under this witness' testimony the statements in the proof of loss should not be considered conclusive evidence as to the time of the commencement of the illness. Woodmen of World Life Ins. Soc. v. Phillips, 258 Ala. 562, 63 So.2d 707.

Under the evidence presented we are of opinion there was no error in the court's refusal of the general affirmative charge nor in the overruling of the motion for a new trial.

Defendant asserts that the trial court erred in giving two charges to the jury at plaintiff's request. It is argued that the charges are misleading because they ignore one of the issues in the stipulation, that is, that if the sickness for which insured was hospitalized originated on or before May 31, 1954, plaintiff could not recover. The charges, which are unnumbered, are as follows:

"Gentlemen of the jury, I charge you under the law of Alabama, that if you are reasonably satisfied from the evidence presented in this case, that although from the standpoint of medical science the initial cause of the illness of Rosa M. Harris may have antedated the issuance of the policy, if the condition did not manifest itself to the extent of hindering or preventing her organs from fulfilling their normal functions until after * * * benefits accrued in the contract, then you should find for the plaintiff.

"Gentlemen of the jury, I charge you under the law of Alabama, that if you are reasonably satisfied from the evidence presented in this case that the normal body functions of Rosa M. Harris were not hindered or prevented from operating until after benefits accrued in the contract, then you should find for the plaintiff."

In view of what we have said above in disposing of other contentions made by defendant we find no error in these charges.

▪ If defendant thought the charges misleading it was incumbent upon it to have requested further or more specific charges. See 2 Ala.Dig. Appeal & Error ⚖216(2) for numerous cases.

The judgment is affirmed.

Affirmed.