122 So.2d 289

**UNITED SECURITY LIFE INSURANCE COMPANY**

v.

Wyatt Elliott SIKES.

5 Div. 561.

Court of Appeals of Alabama.

May 10, 1960.

Rehearing Denied June 30, 1960.

S. P. Keith, Jr., Birmingham, for appellant.

Lewis H. Hamner, Jr., Roanoke, for appellee.

PRICE, Judge.

This is an appeal by the defendant from an adverse judgment in an action on two insurance policies: A hospital and surgical expense policy, issued March 15, 1956, and a hospital weekly indemnity policy, issued February 15, 1957.

Count 1 of the complaint claims $40 due under the 1956 policy for hospital expenses from August 1 to August 8, 1958. Count 2 claims $35.50, due under the 1956 policy for hospital expenses from August 26 to August 30, 1958. Count 3 claims $100 indemnity under the 1957 policy for the period of hospitalization from August 1 to August 8, 1958. Count 4 claims $81.50 indemnity under the 1957 policy for the period of hospitalization from August 26 to August 30, 1958.

Defendant filed pleas of the general issue and filed special pleas numbered four and five to Counts 3 and 4. Plea four alleges that in the application for the February 15, 1957, policy the insured represented that he was in good health and had not had any illness and had not been treated by a doctor for a long period of time, when in fact he was not in good health but was ill a short time prior to making the application, suffering from chronic bronchitis which malady materially increased the risk of loss to the insurer.

Plea five alleges that the policy insured against loss due to sickness originating 30 days after February 15, 1957, the effective date of the policy, and that the cause of plaintiff's illness originated in December of 1956, therefore the illness pre-existed the effective date of the policy. Upon the pleas the plaintiff joined issue. On the trial the court gave the general affirmative charge with hypothesis in favor of plaintiff. The jury returned a verdict in favor of plaintiff in the sum of $257. Defendant's motion for a new trial was overruled, and it appeals.

Plaintiff introduced in evidence both policies of insurance. The policy issued February 15, 1957, contains the provision that "sickness as used in this policy, means sickness or disease, contracted and commencing after this policy has been maintained in force for not less than thirty (30) days from its date and causing loss commencing while this policy is in force."

The application for the policy contract bears date of January 17, 1957. This portion of question numbered 14, and the answer thereto, appears in the application:

"14. If any part of question 10 has been answered 'Yes' give full details below together with details of any other disability, sickness, defects, medical or surgical treatments, consultations, or checkups received during the past five years. (If "none" so state)

| Sickness or Defect | Date | Duration | Operation | Doctor's Name and Address |
|---|---|---|---|---|
| Chronic Bronchitis | 12–56 | 4 | None | Dr. Primm Roanoke, Alabama" |

---

Plaintiff testified he entered the City-County Hospital at La Grange, Georgia, on August 1, 1958, and remained there seven days. The hospital statement for this period of hospitalization, amounting to $288.10 was introduced in evidence as plaintiff's Exhibit 3. Plaintiff was under the care of Dr. Wm. B. Fackler. He was suffering from a condition of fluid collecting in his lungs, and he was treated at the hospital.

On August 26, 1958, he returned to the hospital for further treatment of his condition. At that time his breathing was painful and he had congestion and soreness in his chest. He remained at the hospital until August 30, 1958. A statement for hospital expenses in the amount of $81.50 for the second period of hospitalization was introduced as plaintiff's Exhibit 4. The first sign of illness appeared about June of 1958, and the pain in his chest became noticeable about the middle of July. Prior to June insured worked, felt good, and had no pain or feeling of tightness in his chest.

The policy issued March 15, 1956, provides benefits of $8 "Maximum Daily Hospital Board and Room Expense." Plaintiff testified the defendant had paid the amount claimed for room and board for both periods of hospitalization, and had paid $25 to Dr. Grisamore.

This policy further provides that the insurer will pay certain miscellaneous hospital expense actually incurred, such as laboratory services, operating room, drugs, X-

rays, etc., "although not to exceed five times the maximum Daily Hospital Board and Room Expense as stated in the schedule."

The plaintiff testified he had filed proof of claim for the miscellaneous hospital expense incurred, but the defendant had failed to pay the sum of $40, which is five times the daily board and room expense for the hospitalization period from August 1 to August 8, 1958, and had not paid the sum of $35.50 due for the second period of hospitalization. He testified further that defendant had not paid the $100 weekly indemnity due under the 1957 policy for the week of August 1 to August 8, nor the sum of $81.50 due under the 1957 indemnity policy for the second hospitalization, from August 26 to August 30.

For the defendant Dr. Patrick McHugh testified he and his partner, Dr. Primm, had treated the plaintiff for chronic bronchitis in a hospital at Roanoke, Alabama, from December 1 to December 7, 1956; that he couldn't speak for Dr. Primm, but so far as he was concerned plaintiff was discharged from the hospital as medically well, with his bronchitis cured; that he would say a bronchial infection which lasts five to seven days or longer, or where it reoccurs, is chronic bronchitis; that the condition "Bloody Bilateral Pleural Effusion" as shown by the physician's diagnosis of August 12, 1958, could be caused by twenty-five or thirty different things; that the pleura is the lining of the chest, and the term bilateral pleural effusion means a collection of fluid in both sides of the chest cavity completely outside the lungs; that the bronchial tubes are inside the lungs and bronchitis is an inflammation of the bronchial tube; that in order for the collection of fluid between the lungs and chest wall to be caused as a result of bronchitis it would have to be a very, very severe case, and would not be likely, and is not normal; that the report shown him is an insurance form, not a case history, and there is no way of telling from it what caused the bloody bilateral pleural effusion; that the symptoms of bronchitis are cough, low-grade fever, pain in the chest with difficulty in breathing, but weight loss is very rare; that coughing and tightness in the chest could be indicative of bronchitis, but could also be indicative of other things; that pulmonary emboli means blood clots in one of the veins or arteries of the lungs and could be caused by inflammation or infection.

Defendant's Exhibit 6, the "Hospital Confinement Statement," from August 1 to August 8, 1958, shows a two months history of coughing, heavy feeling in left chest and weight loss. Dr. McHugh stated that the beginning of this condition would be an indication as to the time of origin of the pleural effusion.

The first assignment of error presented in brief is based on the ground of motion for a new trial that the court erred in giving the general affirmative charge in favor of plaintiff.

■ The plaintiff having made out a prima facie case, the burden was on the defendant to prove one or more of its special pleas. Sovereign Camp, W. O. W. v. Sirten, 234 Ala. 421, 175 So. 539; Brotherhood of Railroad Trainmen Insurance Department v. Pemberton, 38 Ala.App. 647, 93 So.2d 797.

■ Clearly, the defendant failed to establish by the evidence the defense that insured failed to disclose the existence of, and previous medical treatment for, the condition of chronic bronchitis. In his reply to the question in the application the applicant stated he had had chronic bronchitis and gave the name and address of the attending physician and the dates of treatment.

We are further of the opinion that insurer has failed to meet the burden cast upon it of showing that insured's illness originated prior to the effective date of the policy.

■ Construction of like provisions in insurance policies has been before our courts many times.

"Sickness" is "any morbid condition of the body * * * which for the time being hinders and prevents the organs from normally discharging their several functions. (It is) any affection of the body which deprives it temporarily of the power to fulfill its usual functions." Martin v. Waycross Coca-Cola Bottling Co., 18 Ga.App. 226, 89 S.E. 495, 496. See also, 29 C.J., Sec. 7, p. 280; Milam v. Norwich Union Indemnity Co., 107 W.Va. 574, 149 S.E. 668; Independent Life Ins. Co. of America v. Butler, 221 Ala. 501, 129 So. 466; Black v. Travellers' Ins. Co., 3 Cir., 121 F. 732, 61 L.R.A. 500." National Casualty Co. v. Hudson, 32 Ala. App. 69, 21 So.2d 568, 570. See also Jefferson Life & Casualty Co. v. Bevill, 264 Ala. 206, 86 So.2d 292; National Security Ins. Co. of Elba, Ala. v. Tellis, 39 Ala.App. 455, 104 So.2d 483.

■ In World Insurance Company of Omaha, Nebraska v. Pipes, 5 Cir., 255 F.2d 464, 471, the court quoted with approval this statement in the case Milam v. Norwich Union Indemnity Co., 107 W.Va. 574, 149 S.E. 668:

"* * * While the word 'sickness' is technically synonymous with such words as 'disease,' it is popularly differentiated in this way: One is not ordinarily considered sick who performs his usual occupation, though some organ of the body may be affected; he is regarded as sick, when that diseased condition has advanced far enough to incapacitate him. * * * A liberal construction of the term 'sickness contracted,' as used in this policy, requires that it be applied to the time when the malady was sufficiently active to disable the patient, and not to the time when it originated, * * *"

Such holding is in accord with our conclusion in National Casualty Co. v. Hudson, supra, and that of the Supreme Court in Jefferson Life & Casualty Co. v. Bevill, supra.

■ So that under these cases even if it be conceded, which we do not, that the medical cause may have antedated the issuance of the policy, insured's actual sickness did not begin until June of 1958. But we are of the opinion the evidence clearly shows that insured's sickness was not a continuation of the bronchitis attack suffered by him in December of 1956, but that he had made a complete recovery and this was a separate illness which did not originate until after the effective date of the 1957 policy.

The policy dated March 15, 1956, provides that it is incontestable as to the time of the origin of sickness after two years from date.

It is our conclusion that the court did not err in giving to the jury the affirmative charge with hypothesis in favor of the plaintiff, and that the defendant's motion for a new trial was properly overruled.

■ Defendant insists that its motion for a new trial should have been granted because of plaintiff's failure to prove that the hospital charges were reasonable. Plaintiff testified he had incurred and paid the several items of hospitalization sued for. Defendant made no motion to exclude the evidence as to the amounts paid the hospital, nor did he ask for an affirmative instruction against recovery for such amounts. "Such procedure should have been followed' if appellee is to have advantage of failure of proof of the reasonableness of expenses not of common knowledge. Birmingham Amusement Co. v. Norris, 216 Ala. 138, 112 So. 633, 53 A.L.R. 840." Conner v. Hamlin, 33 Ala.App. 54, 29 So.2d 570, 571. See also Aplin v. Dean, 231 Ala. 320, 164 So. 737.

■ Since the plaintiff was entitled to the general charge, if any errors were committed by the court in other rulings on the trial, they were without injury to appellant. Stewart v. Joiner, 268 Ala. 241, 105 So.2d

**682**

448; Sovereign Camp, W. O. W. v. Wiggins, 238 Ala. 424, 191 So. 470; First National Bank of Birmingham v. Hendrix, 241 Ala. 675, 4 So.2d 407.

Affirmed.