## STANDARD LIFE & ACCIDENT
## INSURANCE Company *v.* W. OWENS

73-301                                    507 S.W. 2d 704

### Opinion delivered April 15, 1974

*Brown, Compton & Prewett,* by: *William I. Prewett,* for appellant.

*Shackleford & Shackleford,* for appellee.

GEORGE ROSE SMITH, Justice. This is an action by the appellee Owens upon a mortgage protection policy which provided monthly benefits for total disability caused by "sickness commencing more than thirty (30) days after the effective date of the insurance." The jury returned a verdict for Owens in a sum somewhat less than the amount sued for. The insurer's only contention for reversal is that it was entitled to a directed verdict on the ground that Owens' sickness antedated the policy, which became effective on January 1, 1970.

Upon the evidence the trial judge correctly submitted the case to the jury. In November, 1961, Owens suffered a heart attack (myocardial infarction), which disabled him for

three months. He then returned to work on full duty as an auditor for an oil company. In that capacity he drove from 35,000 to 50,000 miles a year, covering parts of eleven states. During those years Owens had routine medical checkups, took medication for his heart condition, and carried nitroglycerin as a precautionary measure.

On February 28, 1971, more than a year after the effective date of the policy in issue, Owens suffered a second myocardial infarction, affecting a different part of his heart. His doctor testified that February, 1971, was the first time when Owens' symptoms were such as to allow a reasonably accurate diagnosis of total and permanent disability based upon the patient's myocardial insufficiency. The doctor said that "the precipitating event of his existent disability is the second myocardial infarction which, as I would say, added insult to injury. Arteriosclerotic heart disease is a condition which many millions of people possess, and he demonstrated the ability to walk away from one infarction, but could not function after the second infarction." The insurer's expert medical witness, a pathologist, testified that the first infarction caused permanent damage to the heart muscle and that the basic disease, arteriosclerosis, had existed for a number of years.

The issue turns upon the word "sickness," which was used in the policy without further explanation. According to what appears to be the uniform trend of the cases, the term does not encompass a non-disabling condition such as that which Owens had for more than nine years after his first heart attack. A typical statement appears in *Milam* v. *Norwich Union Indemnity Co.*, 107 W. Va. 574, 149 S.E. 668 (1929):

> "While the word 'sickness' is technically synonymous with such words as 'disease,' it is popularly differentiated in this way: One is not ordinarily considered sick who performs his usual occupation, though some organ of the body may be affected; he is regarded as sick, when that diseased condition has advanced far enough to incapacitate him. . . . A liberal construction of the term 'sickness contracted,' as used in this policy, requires that it be applied to the time when the malady was suf-

ficiently active to disable the patient, and not to the time when it originated."

To the same effect are *World Ins. Co. of Omaha* v. *Pipes*, 255 F. 2d 464 (5th Cir. 1958); *United Security Life Ins. Co.* v. *Sikes*, 40 Ala. App. 677, 122 So. 2d 289 (1960); *Price* v. *State Capital Life Ins. Co.*, 261 N.C. 152, 134 S.E. 2d 171 (1964); *Fuchs* v. *Old Line Life Ins. Co.*, 46 Wis. 2d 67, 174 N.W. 2d 273 (1970).

Under the many decisions construing language similar to that in the policy now before us, it cannot be said as a matter of law that Owens was sick for a period of nine years after his first myocardial infarction or that the sickness which totally and permanently disabled him did not commence more than thirty days after the effective date of the insurance. The insurer's motion for a directed verdict was correctly denied.

Affirmed.